688 A.2d 614

DENISE RAE BISHOP SCOTT AND WAYNE SCOTT, PLAINTIFFS, v. ANTHONY T. SALERNO AND GNOC, CORP., T/A BALLY'S GRAND HOTEL & CASINO, DEFENDANTS/THIRD–PARTY PLAINTIFFS–RESPONDENTS,PAULINE N. MARCHESE, DEFENDANT, v. RUTGERS CASUALTY INSURANCE COMPANY, THIRD–PARTY DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued January 22, 1997—Decided February 11, 1997.

Before Judges MICHELS and KLEINER.

*Susan L. Moreinis* argued the cause for appellant Rutgers Casualty Insurance Company.

*Alan J. Cohen* argued the cause for respondents GNOC, Corp., t/a Bally's Grand Hotel & Casino and *Anthony Salerno (Sills, Cummis, Zuckerman, Radin, Tischman, Epstein & Gross,* attorneys; *Mr. Cohen,* of counsel; *Mr. Cohen* and *N. Lynne Hughes* on the brief).

The opinion of the court was delivered by

MICHELS, P.J.A.D.

Third-party defendant Rutgers Casualty Insurance Company (Rutgers) appeals (1) from a summary judgment of the Law Division that directed it to indemnify and hold harmless defendant and third-party plaintiffs Anthony Salerno (Salerno) and GNOC, Corp., t/a Bally's Grand Hotel & Casino (Bally's) for expenses incurred by reason of its failure to defend Salerno and Bally's in connection with a personal injury negligence action brought against them by plaintiffs Denise Rae Bishop Scott and Wayne Scott and (2) from a post-judgment order that awarded Salerno and Bally's attorney's fees of $6,820.73.

The facts giving rise to this appeal are essentially undisputed. On June 14, 1993, Salerno, while operating an automobile owned by defendant Pauline N. Marchese (Marchese), was involved in an accident with an automobile owned and operated by plaintiff Denise Rae Bishop Scott (Scott) in Atlantic City, New Jersey. At the time of the accident, Salerno was valet parking automobiles for Bally's. The Marchese automobile was covered by a Personal Auto Policy issued by Rutgers, which, in pertinent part, provided:

### PART A—LIABILITY COVERAGE

INSURING AGREEMENT

A. We will pay damages for "bodily injury" or "property damage" for which any "insured" becomes legally responsible because of an auto accident. Damages include pre-judgment interest awarded against the "insured". We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. In addition to our limit of liability, we will pay all defense costs we incur. Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted. We have no duty to defend any suit or settle any claim for "bodily injury" or "property damage" not covered under this policy.

B. "Insured" as used in this Part means:

. . . .

2. Any person using "your covered auto".

3. For "your covered auto", any person or organization but only with respect to legal responsibility for acts or omissions of a person for whom coverage is afforded under this Part.

. . . .

EXCLUSIONS

A. We do not provide Liability Coverage for any person:

 ....

 6. While employed or otherwise engaged in the "business" of:

 a. selling; d. storing; or
 b. repairing; e. parking;
 c. servicing;

vehicles designed for use mainly on public highways. This includes road testing and delivery. This exclusion (A.6.) does not apply to the ownership, maintenance or use of "your covered auto" by:

 a. you;

 b. any "family member"; or

 c. any partner, agent or employee of you or any "family member".

Following the accident, Scott and Wayne Scott instituted this action against Marchese, Salerno, and Bally's seeking damages for the personal injuries Scott sustained as a result of the accident. By letter dated December 3, 1993, Bally's notified Rutgers of the accident, that the automobile was insured by Rutgers, and that the automobile was being operated by one of its valet drivers. Bally's thereupon demanded that Rutgers commence an investigation, provide coverage, and defend and indemnify it and the valet driver in connection with the Scotts' action. Thereafter, Rutgers advised Bally's that it would not enter an appearance on its behalf since Bally's was not operating the automobile and was not covered under the omnibus provisions of the Rutgers policy. However, Rutgers advised Bally's that it would provide a defense for Salerno under a reservation of rights. On February 3, 1994, under a reservation of rights, Rutgers filed an answer to the Scotts' complaint on behalf of Marchese and Salerno. On the same day, Bally's filed an answer and a third-party complaint against Rutgers on its own behalf and also on behalf of Salerno. In the third-party complaint, Salerno and Bally's sought a declaratory judgment that the Rutgers' Personal Auto Policy issued to Marchese provide coverage to them. They also sought counsel fees and costs.

During the course of pretrial depositions, Salerno testified that he was employed by Kinney Systems, Inc. (Kinney). As a result, the trial court granted plaintiff leave to file an amended complaint to name Kinney as a defendant. However, any issue as to

whether Salerno was employed by Kinney or by Bally's was never resolved because Bally's and Salerno had already moved for summary judgment on the third-party complaint for coverage. They contended that the exclusionary language in Exclusion A.6. of the Rutgers' Personal Auto Policy was violative of our public policy, and, therefore, the exclusion was void and unenforceable. The trial court agreed and held that the Rutgers' Personal Auto Policy provided coverage to Salerno and Bally's for the Scott–Marchese automobile accident, and ordered Rutgers to defend and indemnify them for expenses incurred in defending the Scotts' action up to the limit of the policy. In granting summary judgment, the trial court reasoned:

> Salerno and Bally's, as Salerno's employer, are covered under the Rutgers policy Part A Section B Number 2 and 3 which describes the "insured" as "any person using your 'covered auto' " and "for 'your covered auto', any person or organization, but only with respect to legal responsibility for acts or omissions of a person for whom coverage is afforded under this Part." According to the terms, Bally's and Salerno are covered under the policy. The only way Rutgers can attempt to avoid coverage is under the exclusions. The only exclusions they might claim to have any relevance are # 5, which is for the operation of a vehicle while it was being used as a public or livery conveyance. In this case, this vehicle was clearly not being used as a public or livery conveyance. Or # 6, while employed or otherwise engaged in the business of parking cars, would be the second exception. Under *American Home Assurance Co. v. Hartford Insurance Co.*, 190 *N.J.Super.* 477 [464 *A.*2d 1128], the court held that "when a customer's liability insurance policy covers any person using his automobile with his permission and within the scope thereof, a provision excluding coverage if the automobile is used by a person engaged in the automobile business is invalid." See 190 *N.J.Super.* at 486 [464 *A.*2d 1128]. Even though *N.J.S.A.* 39:6–46 was repealed, *N.J.S.A.* 39:6–48 is still in effect, and this indicates that insurance must be provided in accordance with the coverage defined in Sections 24 and 25 of the Act, which was *N.J.S.A.* 39:6–46. The court finds that the coverage must be provided under the policy. The court finds that Rutgers is responsible for providing coverage to Bally's and to Salerno. Salerno was certainly using the vehicle with the permission of the owner. The court does not find that the vehicle being used was a public or livery conveyance, and the "parking" exclusion is invalid.

The trial court also held that since Rutgers owed the defense, it was responsible for the counsel fees and costs incurred by Bally's and Salerno in defending this action. Bally's filed an application for counsel fees and costs supported by an affidavit of services. Rutgers objected to the award of counsel fees, contending that it

had been paying for the defense of Salerno from the commencement of the action and, therefore, should not be compelled to also reimburse Bally's for any counsel fees and costs Bally's incurred in defending Salerno. Rutgers also argued that the affidavit of services set forth only the bulk amount of the services and costs and did not comply with R. 4:42–9(b). The trial court reviewed *in camera* the file that was submitted by Bally's and Salerno in support of their application for counsel fees and costs and awarded them $6,820.73. Thereafter, the Scotts' claims against Salerno were settled for $40,000 and this appeal followed.

### I.

Rutgers contends that summary judgment should be reversed because its policy expressly excluded liability coverage for any person while employed or otherwise engaged in the business of parking or storing vehicles. Rutgers argues that because "*N.J.S.A.* 39:6–46 was expressly repealed and the language relied upon by the lower court was not specifically reenacted[,] L.1979, c. 169 sect. 5, eff. 8/9/89[,]" by its "replacement" statute *N.J.S.A.* 39:6B–1 *et seq.*, "there is no statutory or other bar to enforcing Exclusion 6 precisely as it reads; i.e., to exclude coverage for those driving the insured vehicle while in the 'business' of parking or storing the vehicle." We disagree and affirm.

 Our function in construing a policy of insurance, as with any other contract, is to search broadly for the probable intent of the parties in an effort to find a reasonable meaning in keeping with the expressed general purposes thereof. *See Fidelity Union Trust Co. v. Robert*, 36 *N.J.* 561, 567, 178 *A.2d* 185 (1962); *American Home Assur. Co. v. Hartford Ins. Co.*, 190 *N.J.Super.* 477, 484, 464 *A.2d* 1128 (App.Div.1983); *Tooker v. Hartford Accident & Indem. Co.*, 128 *N.J.Super.* 217, 222–23, 319 *A.2d* 743 (App.Div.1974); *Insurance Co. of Pa. v. Palmieri*, 81 *N.J.Super.* 170, 179, 195 *A.2d* 205 (App.Div.1963), *certif. denied*, 41 *N.J.* 389, 197 *A.2d* 15 (1964). In this pursuit, a broad and liberal view should be taken where the policy provisions relate to the inclusion

of persons other than the named insured within the protection afforded. *See Mazzilli v. Accident & Cas. Ins. Co. of Winterthur,* 35 *N.J.* 1, 8, 170 *A.*2d 800 (1961); *American Home Assur. Co. v. Hartford Ins. Co., supra,* 190 *N.J.Super.* at 484, 464 *A.*2d 1128.

Although *N.J.S.A.* 39:6–46 has been repealed, we have specifically held that it has been replaced by *N.J.S.A.* 39:6B–1. *See Parkway Iron & Metal Co. v. New Jersey Mfrs. Ins. Co.,* 266 *N.J.Super.* 386, 389, 629 *A.*2d 1352 (App.Div.1993), *certif. denied,* 135 *N.J.* 302, 639 *A.*2d 301 (1994). *N.J.S.A.* 39:6B–1, in pertinent part, provides:

> Every owner or registered owner of a motor vehicle registered or principally garaged in this State shall maintain motor vehicle liability insurance coverage, under provisions approved by the Commissioner of Insurance, insuring against loss resulting from liability imposed by law for bodily injury, death and property damage sustained by any person arising out of the ownership, maintenance, operation or use of a motor vehicle. . . .

In view of the strong public policy of this State to provide coverage to anyone using an automobile with the owner's permission, the exclusion from that coverage of anyone using the automobile while parking or storing that automobile contained in Exclusion A.6. of the Rutgers' Personal Auto Policy is void and unenforceable even though *N.J.S.A.* 39:6B–1 does not contain the same omnibus language contained in *N.J.S.A.* 39:6–46, which was repealed. Our conclusion in this regard is supported by *Harleysville Ins. Co. v. Crum & Forster Personal Ins.,* 246 *N.J.Super.* 503, 588 *A.*2d 385 (App.Div.1990). There we declared a nearly identical policy exclusion to be violative of the State's public policy and void. We held that notwithstanding the exclusion of coverage for anyone while employed or otherwise engaged in the business or occupation of selling, repairing, servicing, storing or parking vehicles, an automobile repair shop employee, who was operating a customer's car with the customer in the car when he was involved in an accident, was covered as an additional insured under the customer's policy. We held that "[t]he exclusion as an additional insured of any person employed or otherwise engaged in duties in connection with an automobile business 'violates the clear public policy of this State

and any policy provision containing such exclusion is void.'" *Id.* at 507, 588 *A.*2d 385 (quoting *American Home Assur. Co. v. Hartford Ins. Co., supra,* 190 *N.J.Super.* at 486. 464 *A.*2d 1128). *See also Parkway Iron & Metal Co. v. New Jersey Mfrs. Ins. Co., supra,* 266 *N.J.Super.* at 390–91, 629 *A.*2d 1352.

## II.

██ Since the exclusion is void and unenforceable, the trial court properly held that Bally's and Salerno were covered as insureds under the Rutgers policy. The policy expressly provides coverage for any person using the covered vehicle and for any person or organization with respect to legal responsibility for acts or omissions of a person for whom coverage is afforded under the policy. Rutgers contends that "[u]nder any circumstances, there is no coverage for Bally's under the facts of this case" because "there was never a determination that Bally's was Salerno's employer or otherwise legally responsible for his acts." Such a determination is required by the provision stating that "insurance" refers to "any person or organization but only with respect to legal responsibility for acts or omissions of a person for whom coverage is afforded under this Part." At the trial, Rutgers alleged that Salerno was a commercial agent of Bally's. It is now conceded that Salerno was employed by Kinney. Bally's contends that Kinney was under contract with it and, therefore, it was the party to whom Marchese's automobile was placed for valet services. Thus, Bally's argues that it was the party involved in the valet services, and thus it, as well as Salerno, was an insured under the Rutgers policy.

██ That Bally's employed Salerno was not challenged in the trial court. Hence, there was no genuine issue of material fact as to the identity of Salerno's employer at the time the summary judgment motion was heard and decided, and we will not consider such an issue now. Issues raised for the first time on appeal are not ordinarily considered by courts of review unless the issue relates to the jurisdiction of the trial court, concerns matters of

great public importance, or constitutes plain error. *Docteroff v. Barra Corp.*, 282 *N.J.Super.* 230, 237, 659 *A.2d* 948 (App.Div.1995). *See also R.* 2:10–2; *Nieder v. Royal Indem. Ins. Co.*, 62 *N.J.* 229, 234, 300 *A.2d* 142 (1973); *Hamilton, Johnston, & Co. v. Johnston*, 256 *N.J.Super.* 657, 662, 607 *A.2d* 1044 (App.Div.), *certif. denied*, 130 *N.J.* 595, 617 *A.2d* 1219 (1992). Moreover, parties cannot complain that the trial court took as true facts which were not contested or challenged. *See Judson v. Peoples Bank & Trust Co. of Westfield*, 17 *N.J.* 67, 75, 110 *A.2d* 24 (1954). In fact, Rutgers is bound by having alleged below that Salerno was the agent of Bally's. *See Howard Savings Bank v. Liberty Mutual Ins. Co.*, 285 *N.J.Super.* 491, 497, 667 *A.2d* 390 (App.Div.1995).

Not only is the issue inappropriate here, but any evidence on the issue which is not in the record cannot be considered. Appellate courts can consider a case only to the point at which it had been unfolded below. *Bilotti v. Accurate Forming Corp.*, 39 *N.J.* 184, 188, 188 *A.2d* 24 (1963). Thus, appellate review is confined to the record made in the trial court, *Wallach v. Williams*, 52 *N.J.* 504, 505, 246 *A.2d* 713 (1968), and appellate courts will not consider evidence submitted on appeal that was not in the record before the trial court, *Middle Dep't Insp. Agency v. Home Ins. Co.*, 154 *N.J.Super.* 49, 56, 380 *A.2d* 1165 (App.Div. 1977), *certif. denied*, 76 *N.J.* 234, 386 *A.2d* 858 (1978).

However, "[t]he failure to appreciate issues vital to disposition, because of the inadequacy of a factual record, presents a real and frequently overlooked hazard to the granting of summary relief." *Chemical Bank v. Penny Plate, Inc.*, 144 *N.J.Super.* 390, 399–400, 365 *A.2d* 945 (App.Div.1976). Thus, summary judgment can be reversed where the case was not ripe for a summary judgment determination because discovery, though proceeding in a timely fashion, was incomplete. *J. Josephson, Inc. v. Crum & Forster Ins. Co.*, 293 *N.J.Super.* 170, 203–04, 679 *A.2d* 1206 (App.Div.1996). *See also Velantzas v. Colgate–Palmolive Co.*, 109 *N.J.* 189, 193, 536 *A.2d* 237 (1988) (when critical facts are peculiarly within movant's knowledge, discovery is incomplete, and there

is a basis upon which plaintiff should be entitled to proceed, summary judgment is inappropriate); *Hermann Forwarding Co. v. Pappas Ins. Co.*, 273 *N.J.Super.* 54, 64, 640 *A.*2d 1200 (App.Div. 1994) (case was not ripe where critical issues were undeveloped before trial court, pretrial discovery was incomplete, interrogatories were unanswered, and depositions were not begun).

The present case was ripe for summary judgment because Rutgers had a reasonable opportunity, from February 3, 1994, the date the third-party complaint was filed, until October 1994, the time papers opposing Bally's' summary judgment motion were due, to proceed with discovery to determine the identity of Salerno's employer. *See Hermann Forwarding Co. v. Pappas Ins. Co., supra*, 273 *N.J.Super.* at 64, 640 *A.*2d 1200; *VanDyke v. Carol Bldg. Co.*, 36 *N.J.Super.* 281, 287–88, 115 *A.*2d 607 (App.Div.1955). In addition, Rutgers never asserted that the case was not ripe. In fact, Rutgers filed its own motion for summary judgment based on the same facts as those contained within Bally's' motion. Finally, the trial court could only consider the facts before it, and at that time, both parties apparently agreed upon the facts. Thus, there was no basis or even suggestion from the parties not to proceed to a summary judgment determination. In sum, we will not reverse the summary judgment and remand the matter for reconsideration of the relationship between Salerno and Bally's.

In any event, we are satisfied that the trial court properly found that Bally's was legally responsible for the acts or omissions of Salerno for whom coverage was afforded under this policy. Marchese gave Bally's permission to park her automobile. At the time of the accident, the automobile was being driven by Salerno, as agent for Bally's, for the very purpose for which it was given to Bally's. Bally's was responsible for the acts of Salerno, and, therefore, Bally's was insured under the Rutgers Personal Auto Policy covering the Marchese automobile.

### III.

Rutgers contends that if it is under a duty to provide coverage for this accident, its coverage must be prorated with the coverage

afforded Bally's in accordance with the "other insurance" clause contained in this policy. The "other insurance" clause provides:

> If there is other applicable liability insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide for a vehicle you do not own shall be excess over any other collectible insurance.

Bally's' automobile liability is insured by the National Union Fire Insurance Company (National Union) with limits of $2,000,000. Bally's' retention or deductible on this policy is $150,-000. In other words, the National Union policy does not come into effect with respect to any loss until the first $150,000 of the loss has been paid by Bally's. While Bally's may be viewed as a practical matter as being self-insured for the first $150,000 of any loss by virtue of the retention or deductible in the policy, this retention or deductible does not qualify as other insurance under the Rutgers policy.

"Other insurance" means " 'another policy of insurance covering the same risks....' " *American Nurses Ass'n v. Passaic Gen. Hosp.*, 192 *N.J.Super.* 486, 495, 471 *A.*2d 66 (App.Div.) (quoting *Universal Underwriters Ins. Co. v. Marriott Homes, Inc.*, 286 *Ala.* 231, 238 *So.*2d 730, 732 (1970)), *aff'd in part, rev'd in part*, 98 *N.J.* 83, 484 *A.*2d 670 (1984).

> [O]ne may be regarded as a self-insurer as to any risk of loss to which he is subject and which is susceptible to insurance coverage but as to which he has not obtained such coverage. As a matter of colloquial usage, he is a self-insurer of that risk. But as a matter both of common sense and the fundamentals of insurance law, a failure to purchase obtainable insurance is not itself insurance. That failure simply and inevitably means that there is no insurance for that risk. Thus, the undertaking to self-insure cannot, by definition, be regarded as insurance. The same is true when only part of the risk of loss is shifted to an insurer. The insured's retained portion of the risk is the so-called "deductible" amount, if any, and the extent to which the risk exceeds the policy limits. The insured is a "self-insurer" as to both retained portions of the risk. Neither, however, constitutes insurance, and it has indeed been held that a deductible from coverage, which can be loosely termed self-insurance, does not constitute insurance within the meaning of a standard other-insurance clause, irrespective of the size of the deductible and whether or not the deductible amount is funded and administered by an insurance company.

> [*Id.* at 491–92, 471 *A.*2d 66.]

In its modifying opinion, the Supreme Court wrote that its first task was to "determine whether the ... 'self-insured sum' was a deductible or whether it constituted 'other insurance' *as contemplated within the excess provision* ...." *American Nurses Ass'n v. Passaic Gen. Hosp.*, 98 *N.J.* 83, 88, 484 *A.2d* 670 (1984) (emphasis added). The Court then stated:

> Though a deductible is frequently referred to as self-insurance, its functional purpose is simply to alter the point at which an insurance company's obligation to pay will ripen. "'Other insurance' [in an excess provision] means a policy of insurance of like kind issued by an insurance company in exchange for a premium charged." 16 *G. Couch, Insurance* 2d § 62.87 (rev. ed.1983). While there is a split of authority on this question, the tendency has been not to regard self-insurance as "insurance."

> [*Id.* at 88–89, 484 *A.2d* 670 (alteration in original).]

Later, in *Ross v. Transport of New Jersey*, 114 *N.J.* 132, 553 *A.2d* 12 (1989), the Supreme Court explained our analysis in *American Nurses Ass'n v. Passaic Gen. Hosp., supra*, while differentiating between being self-insured and being uninsured. The Court explained that in *American Nurses Ass'n v. Passaic Gen. Hosp., supra*, we referred to

> "self-insurance" solely to differentiate between the source of insurance. This was done in the context of finding that a hospital's contractual obligation to indemnify employees for the first $100,000 of any malpractice claim, *i.e.*, the "self-insurance" component of coverage, did not constitute "other insurance" under a policy of insurance held by employees providing nonresponsibility for amounts covered by "other insurance." The context was thus totally different from this case where the term "self-insured" is meant to be used as a form of protection equivalent to a policy of insurance.

> [*Ross v. Transport of New Jersey, supra*, 114 *N.J.* at 143, 553 *A.2d* 12.]

In a later case, we reaffirmed the proposition that deductibles, unlike statutory self-insurance or other forms of protection equivalent to a policy of insurance, are not "other insurance." Both our discussion of this issue and the Supreme Court's "language on the point hold only that 'self-insurance' to the extent that it represents an insured's deductible amount above which a policy will be effective, is not to be considered other insurance." *White v. Howard*, 240 *N.J.Super.* 427, 433, 573 *A.2d* 513 (App.Div.), *certif. denied*, 122 *N.J.* 339, 585 *A.2d* 354 (1990).

"The key question is what, objectively, was the reasonable expectation of [Marchese] when she obtained the liability insurance from [Rutgers]. 'The policy should be read as the ordinary policy-holder would understand it.' " *Kissil v. Beneficial Nat'l Life Ins. Co.*, 64 *N.J.* 555, 561, 319 *A.*2d 67 (1974)." *American Nurses Ass'n v. Passaic Gen. Hosp., supra,* 98 *N.J.* at 88, 484 *A.*2d 670 (citations omitted). Rutgers' "other insurance" clause refers to "other applicable liability insurance" and "other collectible insurance." In the opinion of our Supreme Court, "lay persons would consider 'insurance' to refer to another insurance policy comparable to the one issued to them. Such references would not ordinarily be understood to include the obligation of an insured to pay a deductible." *Ibid.* Consequently, Bally's' retention or deductible does not constitute "other insurance" as contemplated by the "other insurance" provision of Rutgers' policy. Further, Bally's is not self-insured within the sense or form required by *N.J.S.A.* 39:6-52.

In sum, Bally's' $150,000 deductible or retention under the policy issued by National Union does not qualify as other insurance. Since the Scotts' claims were settled for $40,000, which is less than Bally's' $150,000 deductible or retention under the National Union Policy, Rutgers' coverage is not prorated with the coverage afforded by the National Union policy in determining the extent of its liability to the Scotts.

## IV.

Finally, we are also satisfied that the trial court properly held that Bally's is entitled to counsel fees and costs. Rule 4:42-9(a) provides in part: "No fee for legal services shall be allowed in the taxed costs or otherwise, except … (6) *In an action upon a liability or indemnity policy of insurance,* in favor of a successful claimant." Here, Bally's is entitled to recover the counsel fees and costs incurred in defending itself and Salerno in the Scotts' action up to the time that Rutgers took over their defense.

However, the trial court erred in awarding Bally's counsel fees and costs based solely on affidavits and its *in camera* review of Bally's' counsel's files without affording Rutgers an opportunity to review those files and examine counsel with respect to the necessity of the services rendered and the reasonableness of the fees requested. Therefore, the award of counsel fees is reversed and the matter is remanded to the trial court for reconsideration of the counsel fees after affording Rutgers an opportunity to review the files and, if necessary, examine counsel with respect to the necessity of the services rendered and the reasonableness of the fees requested by Bally's.

## V.

Accordingly, the summary judgment in favor of Salerno and Bally's is affirmed. The order awarding counsel fees is reversed and the matter is remanded to the trial court for reconsideration of the award of counsel fees consistent with the views expressed herein. We do not retain jurisdiction.