766 A.2d 1231 (2001)
337 N.J. Super. 374
Alice D. SALAMONE, Plaintiff,
v.
REGENCY PALACE, Hospitality Management Group, Esposito Builders, ABC Corporation #2-5 (fictitious names), John Doe # 1-5 (fictitious names) and State Farm Insurance Company, i/j/s/a, Defendants.
Superior Court of New Jersey, Law Division, Gloucester County.
Decided June 9, 2000.
*1232 David J. Karbasian, Chierici, Chierici & Smith, Moorestown, for defendant State Farm Insurance Company (Julie C. Smith, on the brief).
David J. Schrager, Marmero & Mammano, for plaintiff Alice D. Salamone (Franc J.H. Marmero, Berlin, on the brief).
HOLSTON, J.S.C.
Plaintiff, Alice Salamone, filed suit against co-defendant, State Farm Insurance Company, for personal injury protection (PIP) benefits for medical expenses incurred by her for the treatment of injuries which she sustained on August 17, 1997. The applicable facts, which are not in dispute, are as follows. On that date, at approximately 1:15 a.m., the plaintiff was leaving the Regency Palace in Mt. Laurel, New Jersey, having attended a wedding reception. The plaintiff exited the building and descended the stairs, walking toward her car which had been brought to the curb by the valet parking personnel. The valet pulled her car up to curbside, passenger side to the curb, and exited her car, leaving the driver's side door open and the motor running. As the plaintiff was proceeding to the passenger side of her vehicle to place a small centerpiece on the passenger side seat, and just as she was reaching for the door handle, the heel of her shoe got caught in an expansion joint between the sidewalk and the curb. As a result, the plaintiff lost her balance and fell forward into the passenger side of her vehicle, striking her chin on the car and her knees on the sidewalk.
State Farm filed this motion for summary judgment on the issue of its liability for payment of PIP benefits to the plaintiff, apparently either its named insured or a family member of the named insured, noting the similarity of the facts of this case to those in Aversano v. Atlantic Employers Ins. Co., 290 N.J.Super. 570, 676 A.2d 556 (App.Div.1996), aff'd o.b., 151 N.J. 490, 701 A.2d 129 (1997). This court is required by this motion to determine the extent of the bright line rule, established in Aversano, of a plaintiff to recover PIP benefits in automobile insurance policies, by its interpretation of the "entering into" language contained in N.J.S.A. 39:6A-4.
In that case, the plaintiff, Louis Aversano, asserted that his injuries resulted from "stepping into a pothole in a parking lot as he was walking towards his car with key in hand, right arm extended, reaching for the lock. His wife had `just about' gotten to the passenger door. Plaintiff first made contact with his car `[o]n my way down.'" Aversano, supra, 290 N.J.Super. at 572, 676 A.2d 556. There, PIP benefits were determined not owed to the plaintiff because his injury was not as a result of an accident while "entering into" an automobile. Thus, it is argued, plaintiff in this case is likewise not eligible for PIP benefits under the existing State Farm policy.
Plaintiff, Ms. Salamone, agrees that Aversano provides the controlling case law, but argues that the facts of that case are distinguishable here. The Aversano court stated that the physical contact must be in the "process of entry," and would have, plaintiff argues, allowed recovery of PIP benefits if the plaintiff had started his car, opened its door, and left the engine running. Although each of those acts were performed by a parking valet here, the subject of valet parking has not been previously addressed.
N.J.S.A. 39:6A-4 provides in pertinent part:

*1233 Every automobile liability insurance policy, issued or renewed on or after January 1, 1991, insuring an automobile as defined in section 2 of P.L.1972, c. 70 (C.39:6A-2) against loss resulting from liability imposed by law for bodily injury, death and property damage sustained by any person arising out of ownership, operation, maintenance or use of an automobile shall provide personal injury protection coverage, as defined hereinbelow, under provisions approved by the Commissioner of Banking and Insurance, for the payment of benefits without regard to negligence, liability or fault of any kind, to the named insured and members of his family residing in his household who sustained bodily injury as a result of an accident while occupying, entering into, alighting from or using an automobile ...
The significant language of Aversano states as follows:
If mere proximity to the intended point of entry, coupled with a demonstration of intent to enter, were to be deemed sufficient under the statute, highly subjective and indefinite assessments would have to be made. What distance would be deemed sufficiently close? How much intent to enter would have to be manifested? A "bright line" is preferable.
We hold that "while entering into" was intended by the Legislature to denote a process of entry which begins, at the earliest, when physical contact with the vehicle is made with intent to enter. Here, the accidental fall occurred prior to that point in time. The later incidental contact with the vehicle came about not during entry, but as a result of the fall.
[Aversano, supra, 290 N.J.Super. at 575, 676 A.2d 556.]
Clearly, the Aversano court was, consistent with the intent of the amended no-fault law, seeking to narrow the scope of the phrase "while entering into" by reducing the subjective nature of its application. In doing so, the court determined that a showing of only proximity to point of entry and a demonstrated intent to enter, together, were not sufficiently objective for these purposes. In the present matter, the plaintiff has demonstrated both of these criteria. However, the plaintiff argues, she has demonstrated more, as evidenced by the facts that her vehicle had been entered, driven to the appointed point of entry, and its door opened.
An examination of the bright line rule laid down in Aversano does not resolve the ambiguities of its application to this case. Entry, for purposes of the statute, "begins, at the earliest, when physical contact with the vehicle is made with intent to enter." Ibid. Naturally, in the present scenario, this statement of the law begs the question: Who must physically contact the vehicle in order for an insured to collect PIP benefits after striking the automobile while falling?
Despite the restrictions imposed by the case law upon the application of the statutory phrase "while entering into," it is also clear that "New Jersey's no-fault compulsory automobile-insurance scheme, found in the New Jersey Automobile Reparation Reform Act, N.J.S.A. 29:6A-1 to -35 (the Act), must be `liberally construed so as to effect the purpose thereof.' N.J.S.A. 39:6A-16."' Lindstrom v. Hanover Insurance Co., 138 N.J. 242, 247, 649 A.2d 1272 (1994) (quoting N.J.S.A. 39:6A-16). Accordingly, courts have held that the legislative intent behind PIP benefits is to ensure the broadest coverage possible so long as an automobile was involved in that which happened, Svenson v. National Consumer Ins. Co., 322 N.J.Super. 410, 731 A.2d 91 (App.Div.1999), and that the no-fault law is social legislation designed to give the broadest protection to automobile accident victims, including prompt payment of claims, consistent with the language of the statute's pertinent provisions. New Jersey Mfrs. Ins. Co. v. Griffin, 253 N.J.Super. 173, 601 A.2d 261 (Law Div. 1991).
*1234 In this case, this court denies summary judgment and holds, consistent with the bright line rule of Aversano, that a valet may act as an agent of an insured for purposes of "entering into" under N.J.S.A. 39:6A-4, thus triggering the right to recover PIP benefits, where the valet was acting at the request and under the control of the insured. Although the plaintiff herself did not make contact with her automobile prior to falling, it is clear that physical contact with her vehicle was made upon her request. Often, establishments such as the Regency Palace utilize valet parking for their patrons as a parking option. Thus, agency principles are implicated.
"Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." Restatement (Second) of Agency § 1 (1957). The comments to that section state, in part:
The relation of agency is created as the result of conduct by two parties manifesting that one of them is willing for the other to act for him subject to his control, and that the other consents so to act. The principal must in some manner indicate that the agent is to act for him, and the agent must act or agree to act on the principal's behalf and subject to his control ... The relation which the law calls agency does not depend upon the intent of the parties to create it, nor their belief that they have done so. To constitute the relation, there must be an agreement, but not necessarily a contract, between the parties; if the agreement results in the factual relation between them to which are attached the legal consequences of agency, an agency exists although the parties did not call it agency and did not intend the legal consequences of the relation to follow.
[Restatement (Second) of Agency § 1, comments a, b (1957).]
Here, had the plaintiff parked her vehicle herself, she may well have moved her vehicle to that curbside location, left it running, and returned to place the centerpiece on the passenger side seat. In that case, the plaintiff would clearly have made physical contact with her vehicle and would have been covered under the PIP statute. However, in this situation, she was prevented from doing so because a valet did so for her.
Therefore, given the facts of this case, this court finds that the policy behind Aversano `s objective test is satisfied; Aversano simply did not account for the factual pattern which exists in this case. Physical contact with plaintiff's vehicle in this case had been made vicariously through the valet, shortly before the accident, in objectively verifiable furtherance of the plaintiff's use of her vehicle. Thus, the statutory requirement is adequately met.
In other contexts, insurers have been required to provide coverage where accidents were caused by parking valets and not by their insureds. For example, in Scott v. Salerno, 297 N.J.Super. 437, 688 A.2d 614 (App.Div.), cert. denied, 149 N.J. 409, 694 A.2d 194 (1997), an owner's automobile insurer was required to provide liability coverage to a parking valet and casino for an accident which occurred while the car was being parked. There, Rutgers Casualty Insurance Company argued that, "because its policy expressly excluded liability coverage for any person while employed or otherwise engaged in the business of parking or storing vehicles," the trial court's grant of summary judgment to the plaintiffs should be reversed. Id. at 444, 688 A.2d 614. The court disagreed, citing New Jersey's strong public policy to provide insurance to anyone using an automobile with the owner's permission. Id. at 445, 688 A.2d 614. See also Chubb & Son, Inc. v. Edelweiss, Inc., (1 Dept.1999) 258 A.D.2d 345, 345-56, 685 N.Y.S.2d 221, 222: "The motion court correctly found that the parking transaction constituted a bailment as a matter of law, since defendant's dominion and control of the car was established by undisputed evidence that its employee took the *1235 key to the car and employed a `mandatory procedure' to ensure the key's return."
The present legal formulation is not confined to situations involving valets, but neither should it be construed broadly. A key and necessary feature of any principal-agent relationship is the right of the principal to control the agent. Kernan v. One Washington Park Urban Renewal Assocs., 154 N.J. 437, 713 A.2d 411 (1998), Arcell v. Ashland Chem. Co., 152 N.J.Super. 471, 494, 378 A.2d 53 (Law Div.1977), Restatement (Second) of Agency § 14 (1957). Disputes concerning recovery of PIP benefits in the absence of actual and personal accomplishment of the "entering into" criteria should be examined strictly under this control concept. In this case, it is clear to this court that the plaintiff exercised the requisite control over the valet by requesting that her car be driven to meet her at that time, at the curbside where she was in fact waiting for the vehicle to be delivered.
Finally, the substantial nexus causation requirement between the injury and qualifying vehicle is present. Had the valet not moved plaintiff's vehicle to its location at the time of her injury, the plaintiff would likely not have been walking in the location where the heel of her shoe became caught, and the plaintiff would certainly not have struck her chin on the vehicle during her fall.
Accordingly, State Farm's motion is denied.