**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2266-19

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

RONALD MCGRAW,

      Defendant-Appellant.

_____

Argued November 15, 2021 – Decided December 8, 2021

Before Judges Fasciale and Vernoia.

On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Indictment No. 02-07-0950.

Peter T. Blum, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Peter T. Blum, of counsel and on the briefs).

Mark Niedziela, Assistant Prosecutor, argued the cause for respondent (Camelia M. Valdes, Passaic County Prosecutor, attorney; Mark Niedziela, of counsel and on the brief).

PER CURIAM

In 2004, a jury convicted defendant Ronald McGraw of the first-degree murder of Michael Carter, first-degree conspiracy to commit murder, and related weapons offenses. The court imposed a fifty-year sentence with a forty-two-and-one-half year period of parole ineligibility under the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. Defendant appeals from a January 7, 2020 order denying his motion under Rule 3:21-10(b) to correct what he contends is an illegal sentence.

Defendant offers the following argument in support of his appeal:

> POINT I
>
> THE PAROLE BAR OF APPROXIMATELY FORTY-THREE YEARS WAS CRUEL AND UNUSUAL PUNISHMENT BECAUSE THE COURT IMPOSED IT UPON AN EIGHTEEN-YEAR-OLD OFFENDER IN THE FACE OF SCIENCE THAT COUNSELED STRONGLY AGAINST IMPOSING SUCH A SENTENCE UPON A PERSON OF THAT AGE. U.S. CONST. AMEND. VIII, XIV; N.J. CONST. ART. I, ¶ 12.

We have considered defendant's argument in light of the record presented to the motion court and the applicable legal principles. We are satisfied the court did not err by rejecting defendant's claim his sentence is illegal and denying his motion. We therefore affirm.

A-2266-19

I.

On March 31, 2002, three months before his nineteenth birthday, defendant entered a bar with two fellow members of the Bloods street gang, George Jacobs and Rashawn Cooks. A witness reported to the police that each of the men had guns. Defendant later testified at his trial that he, Jacobs, and Cooks went to the bar to confront fellow gang member Michael Carter because he had associated with a member of a rival gang. According to defendant, he, Jacobs, and Cooks planned to administer a "thirty-one second beat down" of Carter, meaning they intended to beat Carter for thirty-one seconds in retribution for his association with the rival gang member. Instead, when the three men entered the bar, shots were fired from two separate guns, and Carter was killed. Defendant testified at trial he did not have a gun and that Cooks shot Carter.

A jury convicted defendant of the four charges in the indictment returned against him: first-degree conspiracy to commit murder, N.J.S.A. 2C:5-2 and N.J.S.A. 2C:11-3(a)(1); first-degree murder, N.J.S.A. 2C:11-3(a)(1); second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a); and third-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b).[1] The

---

[1] In 2002, N.J.S.A. 2C:39-5(b) provided that unlawful possession of a handgun without first having obtained a permit to carry same was a third-degree offense.

court merged the conspiracy and second-degree weapons offense into defendant's murder conviction, and the court imposed a fifty-year year sentence subject to the requirements of the NERA, N.J.S.A. 2C:43-7.2. The court imposed a concurrent sentence on defendant's conviction for unlawful possession of a weapon. We affirmed defendant's murder conviction and sentence on his direct appeal.[2] State v. McGraw, No. A-2250-04 (App. Div. Nov. 8, 2006). The Supreme Court denied defendant's petition for certification. State v. McGraw, 189 N.J. 427 (2007). Defendant later filed a post-conviction relief petition that was denied. See State v. McGraw, No. A-5803-07 (App. Div. Mar. 15, 2010).

In 2019, defendant filed a motion to correct an illegal sentence. He claimed his fifty-year sentence and forty-two-and-one-half period of parole ineligibility under NERA were "grossly disproportionate" and constituted cruel and unusual punishment under the Eighth Amendment to the United States

---

The statute was amended in 2007, L. 2007, c. 284, § 1, grading the offense a second-degree crime.

[2] On his direct appeal, we reversed defendant's sentence on the third-degree unlawful possession of a weapon charge and remanded for resentencing on that charge. State v. McGraw, No. A-2250-04 (App. Div. Nov. 8, 2006) (slip op. at 23). On remand, the court imposed a four-year sentence on the charge. Defendant's resentencing on the charge is not an issue on this appeal.

Constitution and Article I, Paragraph 12, of the New Jersey Constitution. He also argued that because he was eighteen years old when he committed the murder and thus will not be eligible for parole until he is sixty-one years old, his sentence violates the principles established by the United States Supreme Court in Miller v. Alabama, 567 U.S. 460 (2012), and our Supreme Court in State v. Zuber, 227 N.J. 422 (2017).

The court denied defendant's motion, finding the sentence was not grossly disproportionate and did not constitute cruel and unusual punishment. The court further determined the holdings in Miller and Zuber do not support a finding defendant's sentence is illegal because the holdings are applicable to juveniles, and defendant was an adult when he committed the murder for which he was convicted. The court entered an order denying defendant's motion. This appeal followed.

II.

Whether a sentence is illegal is an issue of law that we review de novo. State v. Drake, 444 N.J. Super. 265, 271 (App. Div. 2016). See also State v. Pomianek, 221 N.J. 66, 80 (2015) (explaining whether a sentence is unconstitutional is an issue of law subject to de novo review). Under Rule 3:21-

10(b), "an order may be entered at any time . . . correcting a sentence not authorized by law including the Code of Criminal Justice[.]"

"There are two categories of illegal sentences:  those that exceed the penalties authorized for a particular offense, and those that are not authorized by law." State v. Hyland, 238 N.J. 135, 145 (2019) (citation omitted).  The two categories "have been 'defined narrowly.'"  Ibid. (quoting State v. Murray, 162 N.J. 240, 246 (2000)).  "[E]ven sentences that disregard controlling case law or rest on an abuse of discretion by the sentencing court are legal so long as they impose penalties authorized by statute for a particular offense and include a disposition that is authorized by law." Id. at 146.  A sentence that is "imposed without regard to some constitutional safeguard" is an illegal sentence that may be challenged at any time under Rule 3:21-10(b)(5).  Zuber, 227 N.J. at 437 (quoting State v. Tavares, 286 N.J. Super. 610, 618 (App. Div. 1996)).

Defendant argues his sentence is illegal because it constitutes unconstitutional cruel and unusual punishment "[u]nder a series of decisions . . . that limit[] the severity of the sentence that may be imposed" on what defendant characterizes as a "young offender."  More particularly, defendant relies on the United States Supreme Court's holdings in Roper v. Simmons, that a death penalty sentence for a juvenile offender constitutes cruel

and unusual punishment, 543 U.S. 551, 568 (2005); Graham v. Florida, that a sentence of life without parole for a juvenile offender who does not commit a homicide constitutes cruel and unusual punishment, 560 U.S. 48, 74 (2010); and Miller, that a mandatory sentence of life of without parole for a juvenile convicted of a homicide offense constitutes cruel and unusual punishment, 567 U.S. at 479. Defendant also relies on Zuber, where our Supreme Court held a sentence imposed on juvenile offender that is the functional equivalent of a life sentence constitutes cruel and unusual punishment unless supported by findings based on the five factors identified in Miller for imposition of a life sentence without parole for a juvenile offender. 227 N.J. at 447-48; see also Miller, 567 U.S. at 477-48 (explaining pertinent factors courts should consider in determining whether to impose a sentence of life without parole for juveniles convicted of homicide offenses).[3]

---

[3] The Miller factors include: the defendant's "chronological age and its hallmark features — among them, immaturity, impetuosity, failure to appreciate risks and consequences"; "the family and home environment that surrounds [the defendant]— from which he [or she] cannot usually extricate himself" or herself; "the circumstances of the homicide offense, including the extent of [the defendant's] participation in the conduct and the way familial and peer pressures may have affected" the defendant; "that [the defendant] might have been charged and convicted of a lesser offense if not for the incompetence[] associated with youth"; and that "mandatory punishment disregards the possibility of rehabilitation even when the circumstances most suggest it." 567 U.S. at 477-78; see also Zuber, 227 N.J. at 453 (summarizing Miller factors).

A-2266-19

Defendant's reliance on the foregoing cases is misplaced. Each of the cases addresses the constitutionality of punishments imposed on children under the age of eighteen, and individuals eighteen and over who are adults under the law. And the reasoning of each of case is founded on the notion that juveniles under eighteen are different than adults. For example, in Miller, the Court explained that sentences must "take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison," 567 U.S. at 480. The Court also noted "Graham's (and also Roper's) foundational principle; that imposition of a State's most severe penalties on juvenile offenders cannot proceed as though they were not children." Id. at 474. And, in Roper, the Court recognized that while "[t]he qualities that distinguish juveniles from adults do not disappear when an individual turns [eighteen]," that age is nevertheless "the point where society draws the line for many purposes between childhood and adulthood" and categorical rules setting eighteen as a dividing line for sentencing purposes are therefore appropriate. 543 U.S. at 574.

Defendant was not a juvenile when he committed the murder for which he was convicted and sentenced. He is therefore not entitled to application of the principles announced in Graham, Roper, Miller, and Zuber. For that reason

A-2266-19

alone, we affirm the court's order denying his motion to correct what he alleges is his illegal sentence.

Defendant offers citations to numerous sources explaining what he contends is developmental science and neuroscience supporting his contention that eighteen-year-old individuals are "different" from adults in the same manner as the "children" discussed in Graham, Roper, Miller, and Zuber. Defendant contends the reasoning and principles in those cases therefore should apply equally to him in determining whether his sentence constitutes an unconstitutional cruel and unusual punishment. We reject the claim because we cannot properly consider the purported scientific evidence referenced in defendant's brief because it was not submitted to the motion court. See Friedman v. Martinez, 242 N.J. 449, 475 (2020) (noting "parties are entitled to have their case decided on the basis of the record before the trial court"); see also Scott v. Salerno, 297 N.J. Super. 437, 447 (App. Div. 1997) (stating "appellate review is confined to the record made in the trial court, and appellate courts will not consider evidence submitted on appeal that was not in the record before the trial court" (citation omitted)).

Moreover, the Courts in Roper, Graham, Miller, and Zuber recognized the developmental differences between child and adults — and indeed relied on the

differences in determining the constitutionality of certain punishments — and imposed constitutional limitations on the imposition of sentences applicable only to juveniles. See, e.g., Roper, 543 U.S. at 569 (noting "differences between juveniles under [eighteen] and adults" cited in psychological literature); Graham, 560 U.S. at 68 (noting "developments in psychology and brain science continue to show fundamental differences between juvenile and adult minds"); Miller, 567 U.S. at 471 (noting the Court's decisions concerning the differences between juveniles and adults "rested not only on common sense . . . but on science and social sciences as well"); Zuber, 227 N.J. at 440-46 (noting the United States Supreme Court's reliance on social science developments showing differences between juveniles and adults).

In those cases, despite the respective Court's manifest awareness of the type of social science and neuroscience evidence defendant attempts to offer for the first time on appeal here, there is no suggestion their holdings extend beyond individuals – juveniles – who commit offenses while under the age of eighteen. Thus, we discern no basis to conclude the Supreme Court of the United States, or the New Jersey Supreme Court in interpreting our State Constitution, intended that the holdings in the cases relied on by defendant should be extended to individuals who commit crimes as adults. We therefore decline defendant's

invitation to find that the constitutional principles applicable to juvenile offenders render unconstitutional the sentence imposed for the murder he committed as an adult.

Any arguments made on behalf of defendant that we have not directly addressed are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2266-19