**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2946-22

ROBERT SHEARRIN,

     Appellant,

v.

NEW JERSEY STATE
PAROLE BOARD,

     Respondent.

_____

Argued June 5, 2024 – Decided August 9, 2024

Before Judges Susswein and Vanek.

On appeal from the New Jersey State Parole Board.

Andrew M. Epstein argued the cause for appellant (Wilson, Elser, Moskowitz, Edelman & Dicker LLP, attorneys; Andrew M. Epstein, on the briefs).

Dorothy M. Rodriguez, Deputy Attorney General, argued the cause for respondent (Matthew J. Platkin, Attorney General, attorney; Janet Greenberg Cohen, Assistant Attorney General, of counsel; Dorothy M. Rodriquez, on the brief).

PER CURIAM

Appellant Robert Shearrin appeals from the April 26, 2023 final agency decision by the State Parole Board (Board) revoking his parole and imposing an eighteen-month State Prison term. This is the latest in a series of parole revocations for Shearrin, who is subject to Parole Supervision for Life (PSL). After carefully considering the record in light of the governing legal principles and arguments of the parties, we affirm.

I.

We discern the following procedural history and pertinent facts from the record.[1] On February 9, 2006, twenty-year-old Shearrin pled guilty to having sex with a minor under sixteen years old in violation of N.J.S.A. 2C:14-2(c)(4). The victim was fifteen years old. On June 9, 2006, Shearrin was sentenced to a three-year prison term and PSL. On February 27, 2007, he was released from prison and parole supervision commenced.

In March 2009, Shearrin's parole was revoked for absconding, and he was returned to prison to serve a twelve-month term. In September 2011, his parole was again revoked for absconding, and he was ordered to serve a fourteen-month term of imprisonment.

---

[1] As we discuss in Section IV, infra, we limit our review to the facts adduced at the parole revocation hearing and the documents considered by the hearing officer, Board Panel, and Board.

A-2946-22

In 2015, Shearrin violated his residency requirements and used marijuana. His parole was continued with an added condition that he complete a drug counseling program. In February 2017, he violated parole by not completing the program. Parole was revoked and he was ordered to serve a sixteen-month term of imprisonment.

That brings us to the violations at issue in this appeal. In September 2022, thirty-seven-year-old Shearrin met a female minor, N.T.,[2] on a bus. N.T. provided a false name and claimed she was nineteen years old. They began a relationship and saw each other about seven times.

On October 5, 2022, Shearrin underwent a medical procedure. He testified that after his procedure, N.T. took him back to the shelter where he was residing. He did not return to the shelter before his curfew. He testified he was denied entry because he was late. Shearrin admitted to paying for a motel room and spending the night with N.T. He also admitted to having oral sex with N.T. that night but denied having vaginal sex.

On October 6, 2022, Shearrin and N.T. were arrested for shoplifting at a mall. N.T. identified herself to police using the same false name she had provided to Shearrin and falsely indicated her date of birth was April 19, 2003.

---

[2] We use initials to protect the victim's privacy. See R. 1:38-3.

Police later discovered her true identity and birthdate, revealing she was seventeen years old.

On October 17, 2022, Shearrin was given a notice of probable cause hearing for the following violations: failure to reside at a residence approved by the parole officer; failure to refrain from initiating, establishing or maintaining contact with any minor; failure to refrain from attempting to initiate, establish or maintain contact with any minor; and failure to refrain from residing with any minor without prior approval from the parole officer.

On January 18, 2023, Shearrin appeared with counsel before Hearing Officer Rebecca Shea and pled guilty to all four violations "with an explanation." The hearing proceeded to determine whether parole should be revoked based on the admitted PSL violations.

Shearrin's daughter's mother, Cassandra Clark, testified that N.T. told her the same false name she had given to Shearrin and also told Clark that she was nineteen years old. Shearrin's mother issued a statement for review also indicating that N.T. identified herself as a nineteen-year-old.

On January 25, 2023, Shea issued a hearing summary and recommended Shearrin's parole be revoked and the imposition of an eighteen-month term of imprisonment. Shea's summary provides in pertinent part:

It is the opinion of this hearing officer that [Shearrin's] violations are serious and revocation is desirable. [Shearrin] was initially convicted of [s]exual [a]ssault, second degree, after it was discovered that he was having a sexual relationship with the [fifteen]-year-old victim. [Shearrin] was released to supervision and did have periods of compliance. However, it was found that [he] was again engaging in a sexual relationship with a minor. [Shearrin] failed to reside at his approved residence and failed to refrain from residing with a minor, as he admitted to paying for a motel room to stay with N.T. Further, [Shearrin] failed to refrain from initiating contact with a minor and failed to refrain from contact with a minor. While it is alleged that N.T. lied about her age, the fact remains that [Shearrin] was consorting with a minor and engaging in sexual relations with same, which is a clear violation of supervision. [Shearrin] was aware of the terms of his supervision and should have done more to ensure his compliance, especially given his commitment offense and subsequent incarceration. It is this hearing officer's opinion that [Shearrin] is a danger to the community and not amenable for community supervision at this time.

Accordingly, this [h]earing [o]fficer recommends that [Shearrin 's] PSL supervision status be revoked and that he be directed to serve an eighteen [] month term of incarceration.

On February 1, 2023, a Board Panel reviewed Shea's summary and agreed that Shearrin's violations were serious, and that revocation was appropriate.

In its April 26, 2023 final agency decision, the Board found:

[D]uring [Shearrin's] January [18], 2023 revocation hearing, [Shearrin's attorney] on [Shearrin's] behalf

5

admitted that [he] failed to: reside overnight at a residence approved by the assigned parole officer as evidenced by [Shearrin] admitting to paying for a room at an unknown location to stay with (N.T.); failed to refrain from initiating, establishing or maintaining contact with any minor; and failed to refrain from attempting to initiate, establish or maintain contact with any minor, as evidenced by incident report 1-2022-020414, incident report 1-2022-020427, both obtained from Millburn PD of [Shearrin] being detained with (N.T. DOB [XX-XX-XXXX]), voluntary statement admitting that he spent a night with (N.T.) at an unknown location and paying for a room for the both of [Shearrin] and (N.T.) to stay, photo #1 of [Shearrin] shooting a video on Wednesday September 28, 2022, of (N.T.), photo #2 of him taking a picture of (N.T.) who appear[ed] to be sleeping/napping on the bus on October 8, 2022 at 11:53 [p.m.], photo #3 of (N.T.) taking a picture of herself on October 4, 2022, at 9:19 [p.m.] and photo #4, a picture [Shearrin] took on October 6, 2022, at 2:40 [a.m.] at an unknown location with (N.T.) sleeping in the background and a pregnancy stick showing not pregnant; and failed to refrain from residing with any minor without the prior approval of the assigned parole officer, as evidenced by [Shearrin's] voluntary statement [] dated October 11, 2022, photo #4 a picture [Shearrin] took on October 6, 2022, at 2:40 [a.m.] at an unknown location with (N.T.) sleeping in the background and a pregnancy stick showing not pregnant, which was past [Shearrin]'s curfew at the . . . shelter.

The Board reviewed the evidence and Shearrin's explanations, noting his "statements and evidence in mitigation of the cited violations were noted in the

6

Revocation Hearing Summary and were considered by the Board Panel." Based

on the foregoing findings, the Board concluded:

> [Shearrin] was released to supervision and did have periods of compliance. However, it was discovered that he was engaging in a sexual relationship with a minor. [Shearrin] failed to reside overnight at his approved residence and failed to refrain from residing with a minor, as [Shearrin] admitted to paying for a motel room to reside overnight with a minor. The Board concurs with the Board [P]anel's finding that [Shearrin's] noncompliance during this term of supervision appears to be similar to the conduct he demonstrated in his commitment offense and that [Shearrin's] noncompliant conduct indicates that he is not amenable to supervision at this time.
>
> Based upon consideration of the facts cited above, the Board finds that the Board [P]anel has fully documented and supported its decision pursuant to N.J.A.C. 10A:71-7.18(b). Additionally, in assessing [Shearrin 's] case, the Board concurs with the determination of the Board [P]anel that clear and convincing evidence exists that [Shearrin] has seriously violated the conditions of his [PSL] status and revocation is desirable. Accordingly, the Board affirms the Board [P]anel's February 1, 2023 decision to revoke [Shearrin's] [PSL] status and direct [Shearrin] to serve an eighteen [] month term of incarceration.

This appeal follows. Shearrin raises the following contention for our

consideration:

> THE PAROLE BOARD'S DECISION TO REVOKE [APPELLANT'S] PAROLE AND IMPOSE A TERM OF INCARCERATION SHOULD BE REVERSED

A-2946-22

BECAUSE THAT DECISION WAS ARBITRARY, CAPRICIOUS AND UNREASONABLE, AND NOT SUPPORTED BY SUBSTANTIAL CREDIBLE EVIDENCE.

He raises the following additional contentions in his reply brief:

POINT I

THE DOCUMENTS WHICH RESPONDENT SUBMITTED IN ITS APPENDICES WHICH WERE NOT PART OF THE AGENCY RECORD SHOULD NOT BE CONSIDERED BY THE COURT IN THIS APPEAL.

POINT II

IN THE EVENT THAT THE COURT CHOOSES TO CONS[I]DER THE DOCUMENTS RESPONDENT SUBMITTED WHICH WERE NOT PART OF THE AGENCY RECORD, THOSE DOCUMENTS SHOULD NOT PRECLUDE REVERSAL OF THE AGENCY'S FINAL DECISION.

POINT III

THE FINAL AGENCY DECISION SHOULD BE REVERSED AS ARBITRARY, CAPRICIOUS AND UNREASONABLE, AS NOT SUPPORTED BY SUBSTANTIAL CREDIBLE EVIDENCE IN THE AGENCY RECORD, AND AS VIOLATIVE OF LEGISLATIVE POLICY.

II.

We preface our analysis by acknowledging the legal principles governing

this appeal. The scope of our review is narrow. Our standard of review is

8

deferential to the Board, and we are limited to evaluating whether it acted arbitrarily or abused its discretion. In re Vey, 272 N.J. Super. 199, 205-06 (App. Div. 1993). "The question for a [reviewing] court is '"whether the findings made could reasonably have been reached on sufficient credible evidence present in the record," considering "the proofs as a whole," with due regard to the opportunity of the one who heard the witnesses to judge of their credibility.'" Hobson v. N.J. State Parole Bd., 435 N.J. Super. 377, 388 (App. Div. 2014) (quoting Close v. Kordulak Bros., 44 N.J. 589, 599 (1965)). The burden is on the challenging party to show the Board's actions were arbitrary, unreasonable, or capricious. Bowden v. Bayside State Prison (Dep't of Corr.), 268 N.J. Super. 301, 304 (App. Div. 1993).

Although most Parole Board actions require proof by a preponderance of the evidence, revocation of parole must be supported by clear and convincing evidence. N.J.A.C. 10A:71-7.12(c)(1); see N.J.A.C. 10A:71-7.15(c). Clear and convincing evidence "persuades the fact finder 'that the truth of the contention is "highly probable."'" Hobson, 435 N.J. Super. at 387 (quoting In re Perskie, 207 N.J. 275, 290 (2011)). "Implicit in that standard is a court's obligation to reverse where the evidence, viewed in the light most favorable to the agency's decision, is inadequate to meet the standard of proof." Id. at 388.

Furthermore, the Board may revoke parole only for serious or persistent violations. N.J.A.C. 10A:71-7.12(c)(1); see also Hobson, 435 N.J. Super. at 391 ("Absent [a] conviction of a crime, the Board has [revocation] authority only if the parolee 'has seriously or persistently violated the conditions of his parole.'") (quoting N.J.S.A. 30:4-123.60). The Board must also determine "[w]hether [the] revocation of parole is desirable." N.J.A.C. 10A:71-7.12(c)(2).

In Hobson, we noted, "[t]he Legislature did not further define the type of conduct it intended to capture within the statutory standard—'seriously or persistently violated.' And the Board has not adopted a regulation to guide exercise of its expertise to distinguish cases in which parole should and should not be revoked." 435 N.J. Super. at 382. Accordingly, we presume this fact-sensitive determination is accorded deference consistent with the Board's recognized expertise in making "'highly predictive and individualized discretionary appraisals.'" Acoli v. N.J. State Parole Bd., 224 N.J. 213, 222 (2016) (quoting Beckworth v. N.J. State Parole Bd., 62 N.J. 348, 359 (1973)).

III.

We next apply these foundational legal principles to the matter before us. Shearrin argues the Board's "decision to revoke [his] parole and impose a term of incarceration should be reversed because that decision was arbitrary,

capricious and unreasonable, and not supported by substantial credible evidence." We disagree. As Shea noted, Shearrin was once again engaging in sexual relations with a minor, in clear violation of his PSL conditions. The Board Panel agreed that the violation was serious and revocation desirable. The Board concurred, noting Shearrin's latest PSL noncompliance "appears to be similar to the conduct he demonstrated in his commitment offense," indicating that "he is not amenable to supervision at this time." The Board also noted that the Board Panel's decision was fully documented and supported as required by N.J.A.C. 10A:71-7.18(b). Given the deferential standard of our review, we have no basis upon which to substitute our judgment for the Board's judgment with respect to the seriousness of Shearrin's latest violations or the desirability of revoking parole and returning him to prison for a prescribed term.

Shearrin challenges the characterization that his noncompliant behavior is "repetitive." The record amply shows, however, he committed persistent violations of the same nature.

Shearrin also contends it was inappropriate to base revocation in part on his failure to return to his assigned residence since his curfew violation was the result of a medical issue. We are unpersuaded by Shearrin's contention that revoking parole based in part on the residency violation violates public policy.

11

Nor are we persuaded that revocation violates public policy because N.T. affirmatively misled Shearrin regarding her age. Cf., N.J.S.A. 2C:14-5(c) ("It shall be no defense to a prosecution for a crime under this chapter that the actor believed the victim to be above the age stated for the offense, even if such a mistaken belief was reasonable."). We are satisfied the policy of protecting public safety by enforcing PSL conditions is well served in this case by revoking Shearrin's parole.

In sum, we conclude the Board acted neither arbitrarily nor capriciously in determining the present violations were serious, and that revoking Shearrin's parole status and returning him to prison was appropriate. See N.J.A.C. 10A:71-7.12(c). The Board's findings and conclusion are amply supported by credible evidence in the record. See Hobson, 435 N.J. Super. at 388.

IV.

Finally, we need only briefly address Shearrin's contention that the Attorney General included documents in its response brief's appendix that are not part of the agency record. It is well-settled that "[a]ppellate courts can consider a case only to the point at which it had been unfolded below." Scott v. Salerno, 297 N.J. Super. 437, 447 (App. Div. 1997). Accordingly, "appellate review is confined to the record made in the trial court, and appellate courts will

12

not consider evidence submitted on appeal that was not in the record before the trial court."  Ibid. (internal quotations omitted).  We apply that principle to the present appeal from a final agency decision.

Although Shearrin did not move to strike the Attorney General's appendix, in light of his contention, on our review we considered only testimony adduced at the revocation hearing and materials relied on in the hearing officer's summary, the Board Panel's decision, and the Board's final agency decision.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2946-22