711 A.2d 899 (1998)
312 N.J. Super. 233
PLANET INSURANCE COMPANY, Plaintiff-Appellant,
v.
ANGLO AMERICAN INSURANCE COMPANY, LTD., Defendant/Third-Party Plaintiff-Respondent,
v.
INTERNATIONAL MOTOR FREIGHT, INC., Third-Party Defendant.
AETNA INSURANCE COMPANY, as Subrogee of Bayway World of Liquors, Third-Party Plaintiff,
v.
PLANET INSURANCE COMPANY, Anglo American Insurance Company, Ltd., Edward Gentile and Ciro Gentile, and International Motor Freight, Inc., Third-Party Defendants.
Superior Court of New Jersey, Appellate Division.
Argued April 29, 1998.
Decided May 22, 1998.
*900 Richard D. Picini, West Orange, for plaintiff-appellant (Picillo Caruso, attorneys; Adrienne Matthews, on the brief).
Ernest W. Schoellkopff, Roseland, for defendant/third-party plaintiff-respondent, (Connell, Foley & Geiser, attorneys; Kevin J. Coakley, of counsel; Mr. Schoellkopff, on the brief).
Before Judges BAIME and BRAITHWAITE.
The opinion of the court was delivered by
BRAITHWAITE, J.A.D.
Plaintiff, Planet Insurance Company (Planet), filed a declaratory judgment action seeking a determination that defendant Anglo American Insurance Company (Anglo) was obligated to provide primary liability coverage pursuant to an insurance policy issued to defendant Edward Gentile (Edward) for a motor vehicle accident that occurred on June 20, 1992. Anglo moved for summary judgment asserting, inter alia, that an exclusion in its policy precluded coverage for the accident caused by Ciro Gentile (Ciro). Planet cross-moved for summary judgment contending that the Anglo policy provided primary coverage for the accident. The judge granted Anglo's motion for summary judgment and denied Planet's cross-motion for summary judgment.
Planet now appeals and contends:
POINT I
THE ANGLO AMERICAN BOBTAIL POLICY WAS TRIGGERED AT THE TIME OF THE UNDERLYING ACCIDENT AS CIRO GENTILE WAS NOT ACTING WITHIN THE SCOPE OF THE LESSEE'S BUSINESS AT THE TIME OF THE ACCIDENT.
POINT II
AS A MATTER OF LAW, FEDERAL REGULATIONS WHICH IMPOSE STRICT LIABILITY ON A CARRIER/LESSEE DO NOT ABSOLVE A LESSOR OR ITS INSURER FROM PERFORMING CONTRACTUAL OBLIGATIONS.
POINT III
IT WAS THE REASONABLE EXPECTATION OF EDWARD GENTILE THAT BOBTAIL INSURANCE WOULD PROVIDE COVERAGE WHEN THE INSURED VEHICLE WAS NOT OPERATING UNDER DISPATCH.
We reject Planet's arguments and affirm.

I
The facts are not in dispute. On May 22, 1991, Edward, the owner of a 1979 Mack tractor, leased the tractor to defendant International Motor Freight, Inc. (IMF), an *901 interstate carrier licensed by the Interstate Commerce Commission (ICC).[1] The lease had a termination date of June 30, 1992. One provision of the lease provided that IMF assumed full responsibility for the operation of the tractor during the period that it was actually operated by or for IMF while the lease was in effect.
Pursuant to applicable federal regulations, IMF secured liability insurance from Planet to cover the tractor. Planet's policy provided combined single limit coverage of $1,000,000. Edward also obtained "bobtail" insurance on the tractor from Anglo to provide coverage when the tractor was being used for nontrucking purposes. That policy provided combined single limit coverage of $300,000.
Ciro, Edward's father, also worked for IMF pursuant to a lease of his 1978 International truck. Shortly before June 20, 1992, Ciro's truck developed engine trouble and the tractor needed repairs. As a result, Ciro sold his truck and took the tractor to a welder to be repaired. On June 20, 1992, Edward took Ciro to the welder to pick up the repaired tractor. On the way home, Ciro stopped at the cleaners to pick up his clothing. After leaving the cleaners and continuing home, Ciro was involved in a motor vehicle accident in Elizabeth, when he lost control of the tractor and struck several vehicles before crashing into Bayway World of Liquors. At the time of the accident, the tractor was not attached to the trailer, but it displayed placards of IMF. As a result of the accident, several personal injury actions were initiated naming Edward, Ciro, and IMF as defendants (underlying actions).[2] After the accident, Ciro continued to operate the tractor for IMF until his driver's license was suspended in 1993. Edward's relationship with IMF ended in August 1992.
Planet defended the Gentiles and IMF in accordance with ICC regulations and settled the underlying actions for $338,993.64.[3] On March 26, 1996, Planet commenced this declaratory judgment action seeking reimbursement from Anglo for the sums paid to settle the underlying actions. Anglo denied coverage based upon a provision in its policy that excludes coverage for a vehicle when it is used in the course or scope of the commercial business of the insured. Third-party plaintiff Aetna Insurance Company (Aetna), subrogee of Bayway World of Liquors, intervened and filed a third-party complaint seeking damages of $27,924.87 on account of damages to the liquor store.
Following cross-motions for summary judgment by Anglo and Planet, the judge concluded that the Anglo policy did not provide coverage for the June 20, 1992, accident, and that Planet had the primary and sole responsibility for damages, including Aetna's. Thereafter, Planet settled with Aetna. This appeal followed.

II
In granting summary judgment to Anglo, the judge stated:
Planet's action rests on its argument that [Ciro's] personal errand to the dry cleaner is enough to permit a factual question as regard [to] whether [Ciro] was driving the tractor for business purposes. But the primary reason for [Ciro's] driving the tractor on the date of the subject accident, it clearly appears, was to pick up the tractor from the repair shop as he was required to do so under the lease. The fact that [Ciro] stopped for a short time to pick up some dry cleaning cannot reasonably support a straight-faced assertion that he *902 was using the tractor outside of the scope of the lease.
It is reasonable to say that Anglo's insurance policy was obtained as a safeguard for the rare situations where [the Gentiles were] using a tractor for wholly personal reasons completely unrelated to ... business. That might have been the case if on the day in question Ciro Gentile used the tractor for the sole purpose of picking up his dry cleaning and running other personal errands. That not being the case, the Court is of the opinion that Anglo ... is not obligated to provide coverage under the circumstances set forth therein.
We agree with the motion judge. The central issue is whether at the time of the accident, the tractor was being "used in the course and scope of the commercial business of the [i]nsured." We find that it was, and thus Anglo's policy does not provide coverage.
As an interstate carrier, IMF's lease and Planet's insurance policy are governed by federal law and regulations, 49 U.S.C. § 301 et seq. and the ICC regulations promulgated thereunder. See Casey v. Selected Risks Ins. Co., 176 N.J.Super. 22, 29-30, 422 A.2d 83 (App.Div.1980); Felbrant v. Able, 80 N.J.Super. 587, 597-98, 194 A.2d 491 (App. Div.1963). A purpose of the ICC regulations is to safeguard the public while using the highways. Felbrant, supra 80 N.J.Super. at 598, 194 A.2d 491. See generally American Trucking Ass'ns, Inc. v. United States, 344 U.S. 298, 73 S.Ct. 307, 97 L.Ed. 337 (1953) (discussing the policy behind the regulations of leased equipment). Although under the lease, IMF was "in the exclusive possession [and] control" of the tractor, that does not resolve the issue here. We must interpret the exclusion of the Anglo policy, which is governed by state law.
The fundamental principle of insurance law is to fulfill the objective reasonable expectations of the parties. E.g., Werner Indus., Inc. v. First State Ins. Co., 112 N.J. 30, 35, 548 A.2d 188 (1988). This is best determined by looking at the plain language of the insurance policy. Longobardi v. Chubb Ins. Co., 121 N.J. 530, 537, 582 A.2d 1257 (1990); Metex Corp. v. Federal Ins. Co., 290 N.J.Super. 95, 104, 675 A.2d 220 (App. Div.1996). When the terms of an insurance policy are clear, the court should enforce it as it is written, not try to make a better contract for either of the parties. State v. Signo Trading Int'l, Inc., 130 N.J. 51, 63, 612 A.2d 932 (1992). It is well-settled that in interpreting insurance policies, the court grants a "broad reading of coverage provisions, narrow reading of exclusionary provisions, resolution of ambiguities in the insured's favor, and construction consistent with the insured's reasonable expectations." Search EDP, Inc. v. American Home Assurance Co., 267 N.J.Super. 537, 542, 632 A.2d 286 (App.Div.1993), certif. denied, 135 N.J. 466, 640 A.2d 848 (1994).
We conclude that the exclusion in the Anglo policy applies here. A fair reading of the exclusion supports the view that the policy does not apply when the tractor was being used in furtherance of the commercial interest of IMF. Habedank v. Atlantic Cas. Ins. Co., 128 N.J.L. 338, 339-40, 25 A.2d 889 (E & A 1942); See Hartford Ins. Co. v. Occidental Fire & Cas. Co., 908 F.2d 235, 239 (7th Cir.1990).
Here, at the time of the accident, Ciro was operating the tractor with Edward's permission. He had gone to pick up the tractor after it was repaired. The lease required that Edward, as the owner, maintain the tractor "in good working condition, furnishing all necessary oil, gasoline, tires and repairs for the operation of the said equipment and to pay all other expenses incident to such operation." Thus, the repair inured to and was in furtherance of the business of IMF. IMF was a beneficiary of the repairs made by Edward. See Cox v. Bond Transp., Inc., 53 N.J. 186, 211, 249 A.2d 579 (1969), cert. denied, 395 U.S. 935, 89 S.Ct. 1999, 23 L. Ed.2d 450 (1969).
After picking up the tractor, on the way home, Ciro stopped at the cleaners to pick up his clothing. The accident occurred after he left the cleaners and resumed his trip home. It is this personal deviation, on the way home from having the tractor repaired, that fuels the debate over which policy provides coverage.
*903 Other cases support our conclusion that Planet's policy provides coverage. In Felbrant, supra, 80 N.J.Super. at 590, 194 A.2d 491, Service Transport Company, a licensed ICC carrier entered into a three-year lease to use Able's tractor-trailer in interstate business. Similar to Edward's lease, Able's lease provided that during the period of the lease Service Transport Company would be in the exclusive use, possession and control of the tractor and that the tractor would display appropriate placards, consistent with ICC rules and regulations. Ibid. After completing a haul for Service, Able was informed that there were no further work assignments and he obtained permission to return home. Id. at 591, 194 A.2d 491. En route, Able was involved in an accident. Ibid. The court found that Service's insurance policy provided coverage for the accident. Ibid. See Cox, supra, 53 N.J. at 206, 249 A.2d 579.
Similarly, if an accident takes place while a lessor is in the process of transporting the tractor to a mechanic for repair work on the vehicle, the act is within the business of the lessee when the lease requires the lessor to keep the tractor prepared for use in the lessee's business, and thus is covered by the lessee's insurance policy. Freed v. Travelers, 300 F.2d 395, 398-99 (7th Cir.1962). See Mellon Nat'l. Bank & Trust Co. v. Sophie Lines, Inc., 289 F.2d 473, 477 (3d Cir.1961) (lessee held liable when the driver was hauling for a third party); Carriers Ins. Co. v. Griffie, 357 F.Supp. 441, 442 (W.D.Pa.1973). (lessee's insurance policy applies where carrier requested that lessor get equipment inspected at a certain inspection station selected by the carrier and while at that station an accident occurred). Moreover, courts have routinely determined that a lessor is acting in furtherance of the lease if an accident occurs after he has finished work for the day and is driving home. Cox, supra, 53 N.J. at 206, 249 A.2d 579.
Planet asserts that because Ciro "was not under dispatch, acting at the direction of or performing services which inured to the business benefit of IMF or the Gentiles," Anglo's policy provides coverage. We disagree with that contention because getting the tractor repaired inured to IMF's benefit. Further, we note that the exclusion language of the Anglo policy is similar to that used in circumstances involving the doctrine of respondeat superior.
Under the doctrine of respondeat superior, an employer is liable to a third party for the torts of one of its employees if that employee is acting within the scope of his or her employment. An employee is acting within the scope of employment if the action is "`of the kind [that the servant] is employed to perform; it occurs substantially within the authorized time and space limits; [and] it is actuated at least in part by a purpose to serve the master.'"
[Abbamont v. Piscataway Township Bd. of Educ., 138 N.J. 405, 416, 650 A.2d 958 (1994) (citations omitted) (alterations in original).]
We conclude that based on the facts here, the minor stop to pick up cleaning on the way home from having the tractor repaired does not take this accident outside the scope of the IMF lease and its commercial business. The tractor was being repaired pursuant to the terms of the lease so that it could be used in IMF's business. Consequently, both the journey to the welder and the return journey home are necessary parts of the same trip. See American Transit Lines v. Smith, 246 F.2d 86, 90 (6th Cir. 1957), cert. denied, 355 U.S. 889, 78 S.Ct. 261, 2 L.Ed.2d 188 (1957). Moreover, the record is clear that the tractor was used consistently during the IMF lease period and continued to be used after the accident.
Generally, those situations where courts have concluded that a lessor's activity falls outside of the realm of the lease occur when the original intent of the activity is clearly personal and the portion of the trip when the accident occurs is completely unrelated to company business. See Hartford, supra, 908 F.2d at 238 (explaining that a non-trucking policy may apply when an accident occurred while the driver or lessor was enjoying a "night on the town"); Foster v. Commercial Standard Ins. Co., 121 F.2d 117, 118-20 (10th Cir.1941) (lessor was operating the truck for pleasure when he drove his mother home in the truck and the truck was rear-ended while parked at her home and therefore not covered *904 by lessee's insurance policy). Here, although the accident occurred after Ciro left the cleaners, it took place in between picking up the truck for repairs and going home. The essential nature of the trip was business, not personal.
Furthermore, the fact that the tractor and trailer were not attached does not mean that the Anglo policy provides coverage. Under certain circumstances, a lessor is acting within the scope of the lease and acting for the benefit of the lessee when an accident occurs, even if the tractor and trailer are not attached. Nationwide Ins. Co. v. DoCompo, 168 N.J.Super. 561, 572-73, 403 A.2d 948 (App.Div.1979). See also Central Nat'l Ins. Co. v. Liberty Mut. Ins. Co., 685 F.Supp. 123, 126 (D.S.C.1988) (tractor that was empty at the time of the accident was being used in the business of the lessee when the driver had the discretion to accept or reject the load). Moreover, the record is clear that IMF's placards were still attached to the tractor. As long as the decals remained on the tractor, there is "a strong presumption" that the tractor was engaged in authorized transportation and that IMF was "still in exclusive possession, control and use of it and was completely responsible for its operation." Cox, supra, 53 N.J. at 204, 249 A.2d 579. Furthermore, the fact that the Gentiles did not work for IMF on Saturdays is irrelevant, as they were still operating within the express requirements of the IMF lease when they took the tractor to be repaired.
Generally, "where one operates a vehicle under a government franchise in the field controlled thereby he assumes liability for the acts done by others to whom he grants permission to use that franchise." Thus, the holder of an Interstate Commerce Commission permit to operate motor vehicles in interstate commerce, having entered into a lease agreement permitting another to operate his truck in interstate commerce under such permit, would be liable for the negligent operation of such truck by the driver thereof.
[Felbrant, supra, 80 N.J.Super. at 594, 194 A.2d 491 (quoting Trautman v. Higbie, 10 N.J. 239, 244, 89 A.2d 649 (1952)) ]
Rule 4:46-2 applies to motions for summary judgment.
[Summary] judgment ... shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.
[R. 4:46-2(c); Brill v. Guardian Life Ins. Co. of America, 142 N.J. 520, 540, 666 A.2d 146 (1995).]
Here, the judge properly determined that Anglo was entitled to a judgment as a matter of law.

III
Planet raises two additional points on appeal. We conclude that they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).
Affirmed.
NOTES
[1] The ICC was terminated pursuant to the Interstate Commerce Commission Act of 1995, P.L. 104-88, 109 Stat. 803 (1995). This case will be discussed in relation to the applicable statutes that existed at the time of the accident.
[2] Colleen McCann v. Edward Gentile, Docket No. UNN-L-5610-92; David P. Krivoshik v. Ciro Gentile, et. al., Docket No. UNN-L-5038-92; Colleen McCann v. Ciro Gentile, Docket No. UNN-L-3956-93; Teresa Nickelmann v. Edward Gentile, et. al, Docket No. UNN-L-0684-93; Joseph Blaho v. International Motor Freight, Docket No. UNN-L-5610-92; Carlos Casal v. Edward Gentile, et. al., Docket No. UNN-L-3542-93; Carlos Casal v. Edward Gentile, et. al., Docket No. UNN-L-1560-93.
[3] In its complaint, Planet stated that the settlement amount for the underlying actions was $368,374.00. In its appellate brief, however, the settlement amount was cited as $338,993.64.