921 A.2d 458 (2007)
392 N.J. Super. 480
The CONNECTICUT INDEMNITY COMPANY, Plaintiff-Respondent,
v.
Richard PODESZWA, Anne Podeszwa, Nelson Perez, Euclides A. Anico, Allway Corp., Security Indemnity Insurance Company and New Jersey Property-Liability Insurance Guaranty Association, Defendants-Respondents and
Richard Podeszwa, Third-Party Plaintiff-Respondent,
v.
Rutgers Casualty Insurance Company, Third-Party Defendant-Appellant.
Anne Podeszwa, Plaintiff-Respondent,
v.
Rutgers Casualty Insurance Company, Third-Party Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued February 28, 2007.
Decided April 27, 2007.
Susan L. Moreinis, Collingswood, argued the cause for appellant.
Jeffrey A. Krawitz argued the cause for plaintiff-respondent Connecticut Indemnity Company (Silverman Bernheim & Vogel, attorneys; Jonathan A. Cass, Philadelphia, PA, on the brief).
Before Judges CUFF, WINKELSTEIN and BAXTER.
The opinion of the court was delivered by
BAXTER, J.S.C. (temporarily assigned).
This appeal requires us to determine whether public policy considerations prevent an insurer of a tractor-truck from excluding from liability coverage all losses sustained by third parties in an accident with the truck while it is being used for business purposes. We conclude that so long as the truck is covered by an additional policy providing coverage for business use, such exclusionary language violates neither the requirements of N.J.S.A. 39:6B-1, nor the public policy of the State. We affirm the grant of summary judgment to Connecticut Indemnity Company.

I.
This matter involves a coverage dispute between plaintiff Connecticut Indemnity Company (Connecticut) and third-party defendant Rutgers Casualty Insurance Company (Rutgers). Rutgers provided liability insurance coverage to Richard and Anne Podeszwa, who were involved in an accident on December 14, 2000 when their vehicle was struck by the tractor-truck owned by Euclides Anico. At the time of the accident, the truck was leased to Allway Corporation and was being driven by Allway's employee Nelson Perez. In accordance with the provisions of the lease requiring the lessee to purchase and maintain liability insurance, Allway purchased a policy of insurance from Security Indemnity Insurance Company (Security). That *460 policy provided Allway with coverage for all liability claims arising while the truck was being used in the business of Allway.
Nine months after the accident, Security was declared insolvent, and the New Jersey Property-Liability Insurance Guaranty Association (PLIGA) assumed responsibility for the defense and any indemnification of Allway, pursuant to the terms of the New Jersey Property Liability Insurance Guaranty Association Act (the Act). N.J.S.A. 17:30A-1 to -20. Pursuant to the terms of the Act, PLIGA required the Podeszwas to exhaust their rights under any other available insurance policies, including filing an uninsured motorist claim (UM) under the UM endorsement of the policy issued to them by Rutgers. N.J.S.A. 17:30A-12.
Connecticut had issued to Anico, the truck's owner, a "non-trucking policy," commonly known as a "bobtail policy." Such policies indemnify commercial truckers from liability when they are "bobtailing," i.e. using the truck without the trailer attached or using the truck for purposes other than commercial or business use. Connecticut's policy provided $1,000,000 of combined single limit liability coverage to all permissive users of the truck, such as Perez. The policy contained the following exclusions:
This insurance policy does not apply to:
1. A covered "auto" while used to carry property in any business.
2. A covered "auto" while used in the business of anyone to whom the "auto" is rented, if the rental agreement requires the lessee to carry primary insurance for liability arising out of the lessee's use of the "auto."
The policy specified, however, that the exclusion for business use of the truck would not apply unless a valid business-use policy is in effect. The policy states:
the above exclusions apply only if there is other liability insurance which is valid and collectible, applicable to the covered "auto", which provides the minimum kinds of coverage required by law and which meets the minimum limits specified by the compulsory or financial responsibility law of the jurisdiction where the covered "auto" is being used or the minimum limits specified by any law governing motor carriers of passengers or property, whichever is applicable.
The trial court entered a preliminary order, which no party challenges, specifying that at the time the truck struck the Podeszwa's vehicle, Perez was using the truck in Allway's business, and thus, the accident occurred while the truck was being used for a "trucking or business" purpose. Connecticut, relying on the exclusion in its policy, refused to pay any damages to the Podeszwas, asserting that its policy only covered the truck when it was being used for "non-trucking" purposes, which was not the case at the time the accident occurred.
Accordingly, on September 28, 2004, Connecticut filed a declaratory judgment action against the Podeszwas, Perez, Anico, Allway, Security and PLIGA seeking a declaration that it had no responsibility for payment of any bodily injury or property damage claims arising out of the accident between Perez and the Podeszwas. After the Podeszwas filed a third-party action against their UM carrier Rutgers, the two complaints were consolidated by the Law Division for disposition. In its answer, Rutgers, in addition to denying all allegations against it, raised the affirmative defense of estoppel, claiming that because Connecticut had paid on a property damage claim asserted by the Podeszwas, it should now be estopped from denying coverage on their bodily injury claims. Rutgers also asserted that Connecticut's denial *461 of coverage violated the provisions of N.J.S.A. 39:6B-1 (Omnibus Clause),[1] as well as the public policy of this State. Rutgers alleges that insurance policies seeking to exclude coverage for certain types of use violate public policy and are void.
The Podeszwas, Rutgers and Connecticut all filed motions for summary judgment, which were heard by the trial court on May 27, 2005. Judge Waugh, relying on our opinion in Planet Insurance Company v. Anglo American Insurance Company, Ltd., 312 N.J.Super. 233, 711 A.2d 899 (App.Div.1998), ruled in favor of Connecticut. He held that "under these circumstances, the coverage of the non-trucking or bobtail policy is not available. . . . I am satisfied that I am bound by Planet Insurance and . . . the Connecticut Indemnity policy . . . does not afford coverage in this situation." The judge signed an order specifying that the exclusionary language of the Connecticut policy issued to defendant Anico was valid and not in violation of public policy, that Connecticut had no obligation to provide liability coverage to Anico or his permissive user Perez for injuries sustained by the Podeszwas in the December 14, 2000 accident, and that Rutgers was obligated to provide UM coverage to the Podeszwas and to submit to UM arbitration. Rutgers appealed.
We pause briefly to review the federal statutory and regulatory framework governing interstate commercial trucking in order to provide context for our decision. Federal law defines a "motor carrier" as a "person providing commercial motor vehicle transportation for compensation." 49 U.S.C.A. § 13102(14). Pursuant to 49 U.S.C.A. § 31144(a), the Secretary of Transportation is required to promulgate regulations governing the responsibilities of motor carriers engaged in interstate commerce. The Secretary, in turn, delegated the rule-making responsibility to the Federal Motor Carrier Safety Administration (FMCSA), which then promulgated the Federal Motor Carrier Safety Regulations (FMCSR). 49 C.F.R. §§ 350.101 to 399.211. The regulations require that a registered motor carrier such as Allway must provide liability insurance or other proof of "financial responsibility," such as a surety bond, sufficient to pay a final judgment against a driver resulting from the driver's negligence. 49 U.S.C.A. § 13906(a)(1). Here, there is no dispute that the lease between the owner Anico and the lessee Allway satisfied the requirements of 49 U.S.C.A. § 13906(a)(1). Allway provided the required insurance in the form of the policy issued by Security. See QBE Ins. Co. v. P & F Container Servs., Inc., 362 N.J.Super. 445, 449, 828 A.2d 935 (App.Div.2003).[2]
If Security had not become insolvent, all parties agree that Security would have been responsible for satisfying the claim filed by the Podeszwas against Perez because the accident occurred while Perez was using the truck for business purposes. Once Security became insolvent, PLIGA assumed responsibility for the claim filed *462 against the now-insolvent Security and agreed to provide coverage to the Podeszwas once all other avenues for coverage were exhausted. N.J.S.A. 17:30A-12a.[3] Thus, coverage under the UM policy issued by Rutgers would have to be exhausted before any PLIGA claim could be submitted. N.J.S.A. 17:30A-12b.[4]
Rutgers acknowledges that if the Connecticut policy did not exist, or if Connecticut's "non-trucking" policy is not triggered, then the Podeszwas would have a valid claim under the UM endorsement of the policy Rutgers issued. Stated differently, all parties agree that because Perez was using the truck in connection with Allway's business at the time of the accident, the Connecticut policy would exclude coverage for the accident as long as the exclusion denying coverage for claims arising out of business use of the truck is deemed valid.

II.
A. Omnibus Clause
Rutgers first argues that the exclusion contained within the Connecticut policy violates the Omnibus Clause, which provides:
[e]very owner or registered owner of a motor vehicle registered . . . in this State shall maintain motor vehicle liability insurance coverage, under provisions approved by the Commissioner of Banking and Insurance, insuring against loss resulting from liability imposed by law for bodily injury, death and property damage sustained by any person arising out of the ownership, maintenance, operation or use of a motor vehicle. . . .
[N.J.S.A. 39:6B-1a.]
This "comprehensive insurance scheme of mandating automobile insurance evinces a strong legislative policy of assuring at least some financial protection for innocent accident victims." Proformance Ins. Co. v. Jones, 185 N.J. 406, 414-15, 887 A.2d 146 (2005) (emphasis added) (citing Home State Ins. Co. v. Cont'l Ins. Co., 313 N.J.Super. 584, 589, 713 A.2d 557 (App. Div.1998), aff'd, 158 N.J. 104, 726 A.2d 1289 (1999)). Accordingly, the goal of the Omnibus Clause is to ensure that an injured party has "some financial protection." Ibid. Rutgers argues that if Connecticut's exclusionary clause is deemed valid, the Omnibus Clause would be violated. We disagree.
Here, Allway did provide liability insurance as required by the Omnibus Clause. Allway purchased through Security a policy providing coverage for those instances when the negligent operation of its truck caused injury to third parties while the truck was being used for business purposes. Anico, as owner of the truck, purchased a policy with Connecticut to provide coverage for those instances when the truck was being used for "non-trucking *463 purposes." Even if the exclusion in the Connecticut policy is deemed to be valid, the Podeszwas would not be left without any financial protection. Allway purchased a commercial use policy from Security, and PLIGA will now stand in Security's shoes and provide coverage if no other coverage is available.
Therefore, we conclude that the statutory requirement that every motor vehicle operated in New Jersey maintain liability insurance to provide compensation to those injured by the negligent operation of such vehicle is not offended by the exclusion contained in Connecticut's policy. We so determine because, under the facts presented here, giving effect to the exclusion in Connecticut's policy will not leave the Podeszwas without financial protection because they have available to them proceeds from the Fund maintained by PLIGA, which in turn, potentially provides the coverage Security would have afforded had it not become insolvent. Ibid.
B. Public policy
Rutgers next argues that the Connecticut policy exclusion violates the public policy of this State. It relies on Proformance, supra, 185 N.J. at 415, 887 A.2d 146 and on our opinion in Scott, supra, 297 N.J.Super. at 445, 688 A.2d 614, as well as decisions from other jurisdictions, in support of its contention that all exclusions in an insurance policy that seek to disclaim coverage for innocent third-parties are void as against public policy.
Connecticut acknowledges that escape clauses are often invalidated in circumstances where upholding such clauses would leave an innocent third-party without recourse. It asserts that here, however, where upholding the bobtail exclusion will not leave the Podeszwa's without financial protection due to the existence of the Rutgers UM coverage, there is no basis in public policy for invalidating the exclusion in its policy. Connecticut further argues that opinions that have invalidated insurance policy exclusions are all distinguishable from the present case.
Before considering those decisions in New Jersey and elsewhere, which have invalidated escape clauses in contexts other than bobtail clauses, we address those instances where a bobtail exclusion has been considered in this State. We first considered a bobtail exclusion in Casey v. Selected Risks Insurance Company, 176 N.J.Super. 22, 422 A.2d 83 (App.Div.1980). There, we upheld a grant of summary judgment in favor of the bobtail insurer and held that it had no obligation to provide coverage because its policy was limited to bobtail or non-commercial use of the truck. Id. at 32-33, 422 A.2d 83. The plaintiff had urged us to void the bobtail endorsement in that policy on grounds of public policy, and thereby deem the policy exposed. Id. at 33, 422 A.2d 83. Relying on N.J.S.A. 39:6B-1, the plaintiff argued there that:
[S]tate legislation requires that any motor vehicle insurance policy [must] provide full coverage while the vehicle is in operation, and . . . an insurer of tractors may not avoid the dictates of such legislation merely by reason of the fortuitous circumstance that the tractor is hauling a trailer that has federally-mandated insurance covering the tractor.
[Ibid.]
After considering that argument, we concluded, in dicta, that while "[a]s an abstract issue of law, it may well be that the `bobtail' provision should not be enforced as being violative of N.J.S.A. 39:6B-1," it was not necessary to decide that issue. Ibid. Before reaching that conclusion, we noted that "the trailer was owned by a certificated I.C.C. carrier that had insurance coverage on the owner-operator *464 of the tractor," and such other coverage was adequate to compensate plaintiff for the injuries sustained by plaintiff's decedent in the accident. Ibid. Under those circumstances, we concluded that "the instant case does not present the need for determining whether the `bobtail' provision in [the bobtail insurer's] policy violates New Jersey law and public policy." Id. at 33-34, 422 A.2d 83. Although we did not address the public policy argument advanced by the plaintiff, we chose not to disturb the decision reached by the trial judge that the bobtail coverage was not void as against public policy because alternate insurance, with sufficient limits, was available. Id. at 27, 34, 422 A.2d 83.
We next had occasion to consider bobtail coverage in Planet, supra, 312 N.J.Super. at 238, 711 A.2d 899. There, we held that because the truck was being used in the course and scope of the commercial business of the insured, the bobtail carrier had no obligation to provide coverage because its bobtail policy was limited to instances where the truck was being used for wholly personal reasons, unrelated to the commercial business of its insured. Id. at 238-39, 711 A.2d 899. In Planet, we therefore upheld the bobtail exclusion, but did not consider any public policy arguments because none had been raised. Id. at 242, 711 A.2d 899.
A year after Planet was decided, we were presented with the same public policy argument that had been advanced in Casey, supra, but not decided. In Moore v. Nayer, 321 N.J.Super. 419, 441, 729 A.2d 449 (App.Div.1999), appeal dismissed, 164 N.J. 187, 752 A.2d 1289 (2000), it was argued that the bobtail policy "violate[d] public policy as contrary to New Jersey's compulsory motor vehicle insurance laws, N.J.S.A. 39:6B-1 and 39:6A-3, as well as being an illegal escape clause." The carrier issuing the bobtail policy relied on our decision in Casey, supra, as support for its argument that summary judgment had properly been granted in its favor. Id. at 425, 729 A.2d 449. Ultimately, in Moore, as we had done in Casey a year earlier, we chose to confine our decision to an evaluation of whether available coverage was sufficient without resorting to Zurich's bobtail policy. Id. at 443, 729 A.2d 449. Once we concluded that the available coverage was sufficient, we saw no need to reach the public policy challenge to the bobtail policy. Id. at 442-43, 729 A.2d 449.[5]
The time has now come to squarely address the public policy arguments being advanced here by Rutgers and earlier by other similarly-situated carriers. As we approach this task, we remain mindful that the term public policy admits of "no exact definition" and the "outer limits" of "practices incompatible with clear mandates of public policy" defy "precise description." Mehlman v. Mobil Oil Corp., 153 N.J. 163, 187, 707 A.2d 1000 (1998). Nonetheless, the court held in Mehlman that public policy is "defined as that princip[le] of law which holds that no person can lawfully do that which has a tendency to be injurious to the public or against the public good." Ibid. (citing Schaffer v. Fed. Trust Co., 132 N.J. Eq. 235, 240-41, 28 A.2d 75 (Ch. 1942)). With that principle in mind, we turn to an analysis of the policy considerations that have caused us to invalidate other types of exclusion clauses in motor vehicle insurance policies.
In Scott, supra, relied on by Rutgers, we considered whether a policy of insurance *465 which excluded from coverage all losses incurred in the "business . . . of parking or storing" a vehicle was violative of public policy. 297 N.J.Super. at 444-46, 688 A.2d 614. There, an employee of Kinney Systems, Inc., under contract with Bally's Casino, was parking a vehicle owned by Pauline Marchese, a customer of the casino, when the employee was involved in an accident with a vehicle operated by the plaintiff. Id. at 441, 688 A.2d 614. Marchese's policy of insurance specifically excluded coverage for the claim because the accident occurred while the vehicle was being operated by a driver in the business of parking cars. Id. at 442, 688 A.2d 614. No coverage was available from the casino's policy of insurance because it contained a self-insured retention, or deductible, in an amount exceeding the loss suffered by the plaintiff. Id. at 451, 688 A.2d 614. Accordingly, the only policy potentially available to satisfy plaintiff's loss was Marchese's. We held that the exclusion for losses sustained in the business of parking a car violated public policy, and was therefore void. Id. at 445-46, 688 A.2d 614. That conclusion was based on our interpretation of N.J.S.A. 39:6B-1, the Omnibus Clause. Id. at 445, 688 A.2d 614. We determined that the statute evinces the "strong public policy of this State to provide coverage to anyone using an automobile with the owner's permission. . . ." Ibid.
Our opinion in Scott was driven by the public policy consideration disfavoring a result that would leave any injured party without recourse to coverage otherwise available on that vehicle. The language of the Omnibus Clause itself, directs "every owner . . . of a motor vehicle . . . garaged in this State [to] maintain motor vehicle liability insurance coverage. . . . N.J.S.A. 39:6B-1. The language concerning the obligation to maintain insurance establishes that the harm we sought to avoid in Scott, when we declared the valet parking exclusion void, was depriving plaintiff of the protection of an otherwise available policy of insurance covering the vehicle that was being driven negligently.
Our own subsequent decisions and those of our Supreme Court establish that the purpose of the Omnibus Clause is to ensure that drivers injured in accidents by the negligence of others have compensation available to them from the other vehicle. The Supreme Court, in Proformance, supra, 185 N.J. at 409, 887 A.2d 146, considered language in a policy of insurance that excluded coverage for injuries arising out of a "business pursuit." There, the insured owner of a pickup truck lent it to her uncle who, despite his niece's instruction to the contrary, used it to haul furniture in his business, and injured a third party. Ibid. In invalidating the "business pursuits" exclusion, the Court held that the exclusion, if enforced, would negate the public policy of protecting innocent third parties and would run afoul of the legislative policy embodied in N.J.S.A. 39:6B-1 to require all New Jersey motorists to carry compulsory insurance. Id. at 420, 887 A.2d 146. Accordingly, the Court invalidated the "business pursuits" exclusion, concluding that it was violative of public policy. Ibid. There, the Court expressed its approval of the treatment of this issue in Marcus v. Hanover Insurance Co., 740 So.2d 603 (La.1999). Id. at 420, 887 A.2d 146. The Louisiana Supreme Court held:
"[t]he statutory scheme is intended to . . . attach financial protection to the vehicle regardless of the purpose for which the vehicle is being operated. Similarly, the goal of all liability policies, which is to benefit injured persons and to give protection and coverage to all insureds, cannot be realized if the instant exclusion is allowed to be enforced. Further, if we were to sanction the exclusion *466 at issue, motorists would be allowed to drive in and out of coverage, depending on the purpose of a particular exclusion, which would wreak havoc on the legislature's goal in enacting an orderly and comprehensive scheme designed for the protection of injured victims of careless drivers."
[Marcus, supra, 740 So.2d at 608.]
Our Supreme Court concluded that "because the protection of innocent third parties is a primary concern of our personal injury no-fault system and because the business use exclusion contravenes that concern, the exclusion will not be enforced in respect of innocent third parties." Proformance, supra, 185 N.J. at 420, 887 A.2d 146.
Unlike the "business pursuit" exception invalidated in Proformance, the bobtail endorsement in Connecticut's policy, if enforced, would not leave an innocent third party without coverage. The integrated comprehensive scheme for interstate haulers required by federal law compels truckers to maintain liability coverage for business pursuits. 49 U.S.C.A. § 13906(a)(1). In the rare instances when the truck is being used for purely personal use, a trucker's bobtail policy provides coverage to any innocent third party. In all other instances, the trucker's commercial policy will do so.
Because of the integrated scheme established by federal law, a truck can never "drive in and out of coverage," which was the evil the Court sought to avoid in Proformance, 185 N.J. at 420, 887 A.2d 146. A bobtail endorsement, such as the one provided here by Connecticut, must always exist in tandem with the commercial policy required by 49 U.S.C.A. § 13906(a)(1). Therefore, a truck driver whose negligence injures another driver will always have coverage available regardless of whether he is using the truck in his business, as Perez was here, or whether he is using it for non-business purposes.
Accordingly, upholding the validity of Connecticut's bobtail policy will wreak none of the "havoc on the legislature's goal" of compensating injured third parties that was found critical in Proformance, supra, 185 N.J. at 420, 887 A.2d 146. Other decisions, both before and after Proformance, have invalidated policy language that would allow a vehicle to be driven in and out of coverage depending on how the vehicle was being used at the time the accident occurred. See Parkway, supra, 266 N.J.Super. at 390-91, 629 A.2d 1352; Harleysville Ins. Co. v. Crum & Forster Personal Ins., 246 N.J.Super. 503, 507, 588 A.2d 385 (App.Div.1990); and Selected Risks Ins. Co. v. Nationwide Mut. Ins. Co., 133 N.J.Super. 205, 215, 336 A.2d 24 (App.Div.1975). Had such exclusions been upheld, our Legislature's goal of ensuring that all vehicles are covered by a liability insurance policy at all times would have been frustrated. In all three decisions, had the exclusion been deemed valid, an innocent driver would have been left without any coverage from the vehicle responsible for causing the accident. All are distinguishable.
In Harleysville, in resolving a choice of law question, we observed that a "shop rule exclusion," which excluded as an additional insured a repair shop employee operating the car with the owner's permission, violated the public policy of this State. 246 N.J.Super. at 507, 588 A.2d 385. We concluded that the policy language conditioning coverage upon the circumstances under which the vehicle was being operated was void. Ibid. We noted that had the exclusion been upheld, the vehicle would have been able to be driven in and out of coverage, thereby frustrating the purpose of N.J.S.A. 39:6B-1.
*467 Similarly, in Parkway, we invalidated an exclusionary clause that denied coverage resulting from "the movement of property by a mechanical device . . . not attached to the covered auto." 266 N.J.Super. at 390-91, 629 A.2d 1352. We held that the exclusion at issue was "`an unwarranted attempt to diminish the extent of coverage required by the [Omnibus] statute.'" Id. at 390, 629 A.2d 1352 (quoting Bellafronte v. Gen. Motors Corp., 151 N.J.Super. 377, 383, 376 A.2d 1294 (App.Div.), certif. denied, 75 N.J. 533, 384 A.2d 513 (1977)). Though framed as a reference to mechanical equipment, the policy language impermissibly "effectively serve[d] to eliminate coverage for certain additional insureds" and was therefore invalid. Id. at 391, 629 A.2d 1352. Like the policy invalidated in Harleysville, had the exclusion been upheld, no policy of insurance would have been available to cover the liability of the subject vehicle.
A similar exclusion was struck down in Selected Risks, where we invalidated a provision in a garage owner's policy of insurance that prevented a customer from having recourse to that policy even though the garage owner had negligently injured the customer who was assisting in the repair. 133 N.J.Super. at 215, 336 A.2d 24. We concluded that limiting coverage to negligent use of a vehicle by the garage owner and his employees impermissibly denied coverage to some users of the automobile and ran afoul of the Omnibus Clause. Id. at 215-16, 336 A.2d 24. As in Harleysville and Parkway, had the policy exclusion been enforced, an innocent third party would have had no recourse against any policy covering the truck.
As we have noted, the policy issued to Perez by Connecticut suffers from none of the same infirmities plaguing the policies in Scott, Proformance, Harleysville, Parkway, or Selected Risks. Here, if Connecticut's policy limiting coverage to bobtail use is upheld, the truck will still be covered by its commercial policy. The mandatory coverage provisions of 49 U.S.C.A. § 13906(a)(1) so require. Unlike the vehicles in all of those cases, which could be driven in and out of coverage, depending upon how they were used, here Allway's truck can never be driven in and out of coverage because it will be covered either by the bobtail policy[6] issued by Connecticut or the commercial policy issued by Security.[7] Thus, the public policy implications that have caused us and the Supreme Court to invalidate policy exclusions depending upon how the vehicle was being used at the time, are wholly absent here. Accordingly, we conclude that Connecticut's bobtail policy does not violate either N.J.S.A. 39:6B-1 or the public policy of this State.
Our review of the treatment of this issue by courts in other jurisdictions reveals that few have been called upon to decide whether bobtail policies violate public policy. Many courts have resolved coverage disputes between the carrier providing bobtail coverage and the carrier providing the business-use policy and have determined which of the two policies applied. Indeed, at least sixteen courts have decided such disputes without ever being presented with a challenge to the validity of a policy such as Connecticut's that limits *468 coverage to non-business use.[8] In none of those sixteen decisions was a public policy argument advanced.
In contrast, New York has had a considerable amount of litigation concerning the validity of bobtail exclusions. In each of those cases, the court construed a New York motor vehicle statute similar to N.J.S.A. 39:6B-1. That New York statute provides in relevant part:
1. Every owner of a vehicle used or operated in this state shall be liable and responsible for death or injuries to person or property resulting from negligence in the use or operation of such vehicle, in the business of such owner or otherwise, by any person using or operating the same with the permission, express or implied, of such owner.
. . . .
4. All bonds executed by or policies of insurance issued to the owner of any vehicle subject to the provisions of this section shall contain a provision for indemnity or security against the liability and responsibility provided in this section
. . . .
[N.Y. Veh. & Traf. Law § 388.]
The New York statute requires anyone owning or using a vehicle in New York to maintain liability insurance for the protection of any permissive user, thus making its goals identical to those contained within New Jersey's Omnibus Clause.
The provisions of the New York statute, requiring that one injured by the negligent operation of a motor vehicle have recourse to a financially responsible defendant, has resulted in the holding that bobtail exclusions are invalid as against New York public policy, as the operation of the exclusion would have left an injured party without recourse. See R.E. Turner, Inc. v. Connecticut Indem. Co., 925 F.Supp. 139, 147-48 (W.D.N.Y.1996); Transport Ins. Co. v. Protective Ins. Co., 696 F.Supp. 870, 872-73 (S.D.N.Y.), aff'd, 868 F.2d 1267 (2d Cir.1988); Transport Ins. Co. v. Protective Ins. Co., 647 F.Supp. 1381, 1385 (N.D.N.Y. 1986); Planet Ins. Co. v. Gunther, 160 Misc.2d 67, 608 N.Y.S.2d 763, 768-69 (Sup. Ct.1993); Randazzo v. Cunningham, 56 A.D.2d 702, 392 N.Y.S.2d 740 (1977), aff'd, 43 N.Y.2d 937, 403 N.Y.S.2d 894, 374 N.E.2d 1245 (1978). The New York Court of Appeals has not to date directly addressed the issue. In each of those cases, despite the existence of other carriers, their respective insurance policies did not *469 cover the subject accident. Transport Ins. Co., supra, 696 F.Supp. at 872-73; Randazzo, supra, 56 A.D.2d at 702-03, 392 N.Y.S.2d 740; Planet Ins. Co., supra, 608 N.Y.S.2d at 769.
The opinion in R.E. Turner, supra, is illustrative. There, the court distinguished a case relied upon by the bobtail carrier, noting that:
[i]n Connecticut Indemnity Company v. Varela, 1995 U.S. Dist. LEXIS, 365, 1995 WL 16800 (S.D.N.Y.1995), relied upon by defendant, the court upheld the validity of the identical bobtail exclusion at issue in this case on the ground that other insurance coverage was available to cover the defendant and, therefore, no public policy issue was affected. However, the facts of that case are distinguishable from the instant case. . . . [t]he parties agreed that the tractor was being used in the business of [lessee]. Claims were filed with [the business-use insurer and the bobtail carrier]. In the resultant lawsuit to determine which insurance carrier had the duty to indemnify, . . . [the bobtail carrier claimed] that it was not liable under the "bobtail" policy exclusion. The court agreed, finding that the exclusion was not against public policy as other insurance, namely [the business-use] policy . . . was available. The court stated that if "the exclusion or overall policy provides for other insurance," the exclusion is valid and not against public policy . . . Finding that, upon the record in that case, there were two insurance policies available to provide coverage, the issue was one of which was primary or excess, there was no need to resort to public policy considerations to resolve the issue of coverage.
[R.E. Turner, 925 F.Supp. at 147.]
In R.E. Turner, the court concluded that the bobtail endorsement was void as against Section 388. Id. at 147-148. Unquestionably, all New York courts that have considered the validity of an exclusion such as the one at issue here have invalidated such policies only because to do otherwise would have left an injured party without recourse to any policy of insurance.
The Michigan Court of Appeals has also had occasion to consider whether a bobtail endorsement violated that state's public policy. Michigan, like New York and New Jersey, has a statute requiring owners of motor vehicles to "maintain security for payment of benefits under personal protection insurance, property protection insurance, and residual liability insurance" for persons using such vehicle with permission of the owner. MCL § 500.3101(1). In Integral Insurance Co. v. Maersk Container Service Co., the Michigan Court of Appeals held that the trial court erred when it held that the bobtail policy was void as contrary to public policy. 206 Mich.App. 325, 520 N.W.2d 656, 659 (1994), appeal denied, 448 Mich. 921, 533 N.W.2d 586 (Mich. 1995). The court noted, "[p]ublic policy prevents an automobile liability insurance policy from containing exclusions not specifically authorized by the Legislature. However, an exclusionary clause is not per se invalid simply because it is not specifically provided for in the no-fault act." Ibid. (citing State Farm Mut. Auto. Ins. Co. v. Snappy Car Rental, Inc., 196 Mich.App. 143, 492 N.W.2d 500, 502-03 (1992), appeal denied, 442 Mich. 884, 500 N.W.2d 479 (Mich.1993)).
The court there concluded that the policy issued by one carrier provided coverage only when the driver was not hauling cargo for a business, while the policy issued by another carrier provided coverage under the opposite circumstances. Id. at 658, 520 N.W.2d 656. The court held "[t]aken together, the policy issued by INA and the bobtail policy issued by Integral provided continuous insurance coverage to the tractor as required by the motor *470 vehicle financing responsibility act." Ibid. Accordingly, the Court held that the policy issued by the bobtail carrier was not void. Ibid.
Here, the truck operated by Perez was covered by the same "continuous insurance coverage" as the Michigan Court of Appeals analyzed in Integral. Allway's truck was covered by the policy issued by Security when it was being operated for business purposes, and was covered by the Connecticut policy when it was not. Therefore, like Integral, there are no circumstances where an injured party would be without recourse from a policy covering Allway's truck. We find the reasoning of the Michigan Court of Appeals in Integral to be persuasive. We reject the public policy arguments raised by Rutgers.
Affirmed.
NOTES
[1] In 1979, the Legislature repealed the statute containing the Omnibus Clause, N.J.S.A. 39:6-46. See L. 1979, c. 169, § 5, eff. Aug. 9, 1979. However, this court has specifically held that N.J.S.A. 39:6-46 has been replaced by N.J.S.A. 39:6B-1, and that the latter statute serves the same purpose as its predecessor, namely requiring mandatory coverage. Scott v. Salerno, 297 N.J.Super. 437, 445, 688 A.2d 614 (App.Div.), certif. denied, 149 N.J. 409, 694 A.2d 194 (1997); Parkway Iron & Metal Co. v. N.J. Mfrs. Ins. Co., 266 N.J.Super. 386, 389, 629 A.2d 1352 (App.Div.1993), certif. denied, 135 N.J. 302, 639 A.2d 301 (1994).
[2] Although QBE discussed a bobtail endorsement, it did not address the issues raised in this appeal.
[3] N.J.S.A. 17:30A-12a provides:

Any person having a covered claim which may be recovered from more than one insurance guaranty association or its equivalent shall be required to exhaust first his rights under the statute governing the association of the place of residence of the insured at the time of the insured event except that if it is a first party claim for damage to property with a permanent location, he shall seek recovery first from the association of the location of the property. If recovery is denied or deferred by that association, a person may proceed to seek recovery from any other insurance guaranty association or its equivalent from which recovery may be legally sought.
[4] N.J.S.A. 17:30A-12b provides: "Any person having a claim, except for a claim for coverage for personal injury protection benefits . . . under an insurance policy other than a policy of an insolvent insurer, shall be required to exhaust first his right under that other policy."
[5] Much of our decision in Moore, supra, concerned issues not pertinent here, including whether a self-insured retention constituted "other insurance" that had to be exhausted before excess clauses became operative, 321 N.J.Super. at 435-39, 729 A.2d 449, and the scope of an indemnification agreement. Id. at 439-41, 729 A.2d 449.
[6] As we have noted, Connecticut's bobtail endorsement specifies that coverage for business use of the truck is not excluded if there is no other coverage available.
[7] We do not view the insolvency of Security as a factor that should cause us to reach a different result. Here, PLIGA stands in the shoes of Security and assumes the role Security would have fulfilled had it not become insolvent.
[8] See Empire Fire & Marine Ins. Co. v. Brantley Trucking, Inc., 220 F.3d 679 (5th Cir.) (applying Texas law), reh'g denied, 234 F.3d 31 (5th Cir.2000); Liberty Mut. Ins. Co. v. Connecticut Indem. Co., 55 F.3d 1333 (7th Cir.1995) (applying Indiana law); Hartford Ins. Co. v. Occidental Fire & Casualty Co., 908 F.2d 235 (7th Cir.1990) (applying Wisconsin law); Connecticut Indem. Co. v. Stringfellow, 956 F.Supp. 553 (M.D.Pa.1997); Ryder Truck Rental Co. v. UTF Carriers, Inc., 719 F.Supp. 455 (W.D.Va.1989), aff'd, 907 F.2d 34 (4th Cir.1990) (applying Virginia law); Cent. Nat'l Ins. Co. v. Liberty Mut. Ins. Co., 685 F.Supp. 123 (D.S.C.1988); Empire Fire & Marine Ins. Co. v. Ins. Co., 638 So.2d 102 (Fla.Dist.Ct. App.3d Dist.), cert. denied, 513 U.S. 1051, 115 S.Ct. 655, 130 L.Ed.2d 558 (1994); St. Paul Fire & Marine Ins. Co. v. Frankart, 69 Ill.2d 209, 13 Ill.Dec. 31, 370 N.E.2d 1058 (1977); Antill v. Bankers & Shippers Ins. Co., 466 So.2d 555 (La. Ct.App. 5 Cir.), cert. granted, 468 So.2d 567 (La.1985) (no subsequent history has been reported); Empire Fire & Marine Ins. Co. v. Liberty Mut. Ins. Co., 117 Md.App. 72, 699 A.2d 482, cert. denied, 348 Md. 206, 703 A.2d 148 (Md.1997); Protective Ins. Co. v. Dart Transit Co., 293 Minn. 402, 197 N.W.2d 668 (1972); Great W. Cas. Co. v. Wenger, 748 S.W.2d 926 (Mo.Ct.App.1988); Neal v. St. Paul Fire & Marine Ins. Co., 197 Neb. 718, 250 N.W.2d 648 (1977); MGM Transp. Corp. v. Cain, 128 N.C.App. 428, 496 S.E.2d 822 (1998); Roseberry v. Balboa Ins. Co., 90 Ohio App.3d 33, 627 N.E.2d 1062 (1993).